[L. A. No. 15724.   In Bank.—May 13, 1937.]

N. E. LANDRETH, Respondent, v. E. F. DUCOMMUN, Appellant.

Oliver O. Clark and Reay, Scharf & Reay for Appellant.

Arthur F. Larrabee and C. E. McDowell for Respondent.

THE COURT.—This is an appeal from a judgment entered upon a directed verdict in favor of the plaintiff in an action on a promissory note. The cause was originally appealed to the District Court of Appeal of the Second Appellate District, wherein the respondent urged, among other things that the reporter's transcript was improperly before the court and should not be considered. This contention, if accepted, would have resulted in the disposition of the appeal on the clerk's transcript of the judgment roll. However, contrary to respondent's contention, the District Court of Appeal considered both transcripts and reversed the judgment upon the evidence appearing in the reporter's transcript. Based on a petition addressed exclusively to this issue concerning the record, we granted a hearing herein not because of any dissatisfaction with the conclusion announced by the District Court of Appeal on the point, for we are of the opinion that the reporter's transcript may properly be considered, but because of our inability to accept the reasons advanced therefor.

It appears that after the defendant had noticed his appeal from the judgment, the plaintiff and respondent moved the trial court to terminate the proceedings for a record to be used on appeal, which motion was granted. Later, the defendant and appellant moved the trial court

for relief under section 473 of the Code of Civil Procedure. Relief was granted and the reporter's transcript was thereupon settled. The plaintiff, respondent herein, then noticed an appeal from the order vacating the prior order terminating proceedings for a record to be used on appeal from the judgment and granting relief under section 473, *supra*. The latter appeal was dismissed (*Landreth* v. *Ducommun*, 9 Cal. App. (2d) 136 [48 Pac. (2d) 984]) on the ground that the order was nonappealable, the opinion stating that any attack on said order should be made on appeal from the judgment. The cited decision has become final and is the law of the case. Moreover, it is supported by the authorities. (*Buis* v. *Lindauer Corp.*, 116 Cal. App. 558, 560, 561 [3 Pac. (2d) 18]; *McWilliams* v. *Hudson*, 98 Cal. App. 185, 188, 189 [276 Pac. 598, 277 Pac. 529].)

Accordingly, we have on this appeal from the judgment examined into the propriety of the order vacating the prior order terminating the proceedings for a record and relieving defendant and appellant from his default in connection therewith. The affidavits and counteraffidavits offered in connection with the motion are sharply conflicting in many respects. They were considered and weighed by the trial court as a result of which some credence was attached to the averments in the defendant's affidavits to the effect that his delay in presenting the transcript was due to inability of the reporter to complete it and the belief that other somewhat similar and related cases which had been tried first were to be heard first on appeal. We perceive no abuse of the broad discretion vested in the trial court in matters of this character and we are therefore of the view that the reporter's transcript was properly settled and certified and is available to the defendant and appellant on this appeal from the judgment.

We are satisfied that the District Court of Appeal has properly disposed of the appeal on its merits and we adopt as and for the decision of this court the following portions of the opinion heretofore prepared by Mr. Justice Desmond, sitting *pro tempore:*

"Plaintiff, as sole endorsee, brought suit upon a $10,000 note signed by defendant on February 25, 1931, and made payable to the order of George A. Smith. After both sides had rested, the court upon plaintiff's motion directed the

jury to render a verdict in her favor. From the judgment entered thereon, defendant appeals, claiming that there was sufficient valid evidence offered by way of defense to require submission of the case to the jury. Complaint is made also that the trial court abused its discretion in refusing to permit certain proposed amendments to defendant's answer; further, that the court erred in rejecting evidence tending to establish fraud and rescission. The additional point is made that at a time prior to the trial of this case error arose when a judge sitting in the law and motion department ordered stricken certain allegations of defendant's answer. . . .

"We turn first to the pleadings and find that the defendant, answering the suit of plaintiff, urges the same defenses that were successfully relied upon in a similar suit brought against him by Smith personally, as payee of four other notes dated May 20, 1931, for $12,500 each. This deal for $50,000 represented by the four notes was an outgrowth of the transaction in which the $10,000 note, the subject of the present action, was given.

"George A. Smith had applied on March 5, 1930, for letters patent on a vehicle turntable designed to operate in small yards and garages, where restricted area or hilly ground would prevent easy turning about or changing direction of an automobile. On July 15, 1930, Smith joined with one A. T. Lawrence in assigning to Ducommun, defendant here, at a price of $10,000, a one-third interest in a partnership having an exclusive license to deal in Los Angeles county, with such rights in the invention as might be secured from the United States patent office. In the following February, Smith sold to Ducommun his interest in this partnership and granted to him an option to buy, prior to August 1, 1931, for the sum of $50,000, the exclusive rights under the patent application within the state of California. The consideration for the partnership interest and the option was $5,000 cash and the promissory note for $10,000 that forms the basis of the present suit. On May 4th following, Lawrence sold his one-third interest in the partnership to Ducommun for $10,000 or thereabouts, and on May 29, 1931, instead of conveying merely the California territory to Ducommun for $50,000, as contemplated by the February 25th option, Smith sold him, for the four notes aggregating $50,000, the exclusive right 'to make, use and vend . . . in the whole of

the United States, except the State of Oregon and the County of Los Angeles'. The agreement between the parties, however, bound Ducommun to organize a corporation which would pay Smith a royalty of $20 on each turntable manufactured, minimum fixed royalties to be paid monthly (otherwise the license to be forfeited) and Smith to receive 1,000 shares of stock at $100 each, of the new corporation, as well as a salary of $500 per month as consulting engineer over a five-year period.

"The first of the $12,500 notes matured May 29, 1932, and not being paid, suit was brought upon all four notes (possibly under a provision for acceleration), resulting in a verdict and judgment in favor of defendant Ducommun. Meanwhile, Smith had died and the administrator of his estate, his associate Lawrence, was substituted as plaintiff, and prosecuted an appeal which was unsuccessful, as appears by reference to *Lawrence, Admr.,* v. *Ducommun,* 14 Cal. App. (2d) 396 [58 Pac. (2d) 407]. That opinion, in abbreviated form, presents the conditions under which the various notes signed by this defendant were obtained from him, stating at page 398, 'It is sufficient to say that Smith and Lawrence, aided and abetted by Reverend A. B. Gardner, a psychic divine, known as "Mother Gardner", who conducted and operated "The Church of the Open Door of Truth", and who held herself out as being able to give business and financial advice obtained from "divine" psychic sources, practiced with success a series of impositions upon defendant to their mutual profit, although the lion's share went to Smith. With the constant help of Lawrence and the continuous divine assistance of "Mother Gardner", Smith managed to administer the final coup de grace to defendant in the form of the contract referred to. Before the blow was dealt, however, there were a variety of representations made, all of which the evidence in a superabundance reveals to have been without a basis in fact. Some of these representations were as follows:

" ' (1) That this turntable was perfected excepting for a few minor improvements.

" ' (2) That Smith had spent $40,000 in perfecting this device.

" ' (3) That Smith had five *bona fide* orders for this turntable.

" '(4) That Lawrence had paid Smith $10,000 for a one-half interest in the Los Angeles county rights to this turntable device.

" '(5) That this device could be manufactured and sold at a profit of $200 to $300 per table.

" '(6) That there was a great demand for said product.'

"The opinion then goes on to say that 'the defendant pleaded several defenses, including fraud, rescission and failure of consideration'. We have the same defenses set up in the present case, particular emphasis being laid on fraud based upon the same representations as are listed in *Lawrence, Admr.,* v. *Ducommun, supra.* We note that the answer states that the various untrue statements attributed to George A. Smith, A. T. Lawrence and A. B. Gardner were made 'to defraud the defendant and to induce him, the defendant, to execute the said note and pay said money and purchase said George A. Smith's interest in said copartnership and to take said option, hereinabove referred to; that the defendant did July 1, 1932, learn that said representations and each of them were false and untrue.'

"Having read the transcript and examined the exhibits introduced upon this trial, we feel that, restricted as defendant was, by orders striking from his answer certain pertinent allegations, and also by rulings that prevented his amending his answer, he did succeed, nevertheless, in presenting substantial evidence upon which a jury might have found that he was the victim of fraud practiced upon him in pursuance of a common plan by Smith, Gardner and Lawrence.

"Fraud is available as a defense against the holder, not in due course, of a negotiable instrument (see secs. 3133, 3136, 3139, Civ. Code), and in this case it appears that plaintiff came into possession of defendant's note almost five months after its date of maturity. Therefore, *prima facie* at least, she is not a holder in due course. It is true that she alleged in her complaint that a few days prior to her receiving the note, the time for its payment was extended by a letter written to Ducommun and for a valuable consideration, to a date approximately six months in the future, namely, August 25, 1932, but this allegation was denied by defendant and no proof of it was made upon the trial; it is apparent,

therefore, that it could not and did not have any bearing upon the court's decision to order a verdict for the plaintiff.''

The judgment is reversed and the cause remanded for a new trial, with directions to the superior court to consider such applications as may be made for amendment of the pleadings.