[Civ. No. 3015. Fourth Dist. May 29, 1942.]

H. J. BRAKHAGE et al., Respondents, v. LOWRY B. McCASLIN, Appellant.

Hanna & Morton and B. W. Burkhead for Appellant.

Burke Mathes for Respondents.

GRIFFIN, J.—Appellant McCaslin acquired an 87½ acre parcel of land in Monterey Park about eleven years ago. He paid no taxes on it thereafter. The property was sold to the state for delinquent taxes several years ago. The taxes and penalties accumulated until October 7, 1939. They then amounted to $12,334.94 on this acreage. They were, in the opinion of the appellant, in excess of the value of the land. Oil activity developed within a few miles of the property. A Mr. Steiger contacted appellant in the month of March, 1939, and was authorized by him to bring persons interested in drilling the property to him. Appellant at that time represented to his agent, Steiger, that the indebtedness was about $8,000, "he didn't state exactly the amount, but he said he thought it was about $8,000" and further stated that, in the event he leased the property, he wanted the sum of $5,000 or the equivalent thereof to guarantee that the well would be spudded in. About April 10, 1939, Steiger contacted respondent Brakhage and represented to him that the indebtedness against the 87½ acres was approximately $8,000 and that McCaslin would require that the sum of $5,000 or the equivalent thereof be placed in escrow to guarantee that the well would be spudded in. Steiger then intro-

duced this respondent to two oil men, Burkholder and Spangler, who agreed to assist the respondent in getting the property drilled if the respondent would make the necessary arrangements to acquire the lease. A few days thereafter Steiger took the respondent Brakhage, Burkholder and Spangler to McCaslin's office. During the course of the negotiations the appellant again stated that the taxes were "approximately $8,000" or "something around $8,000" or "eight thousand, not over eight thousand" and that otherwise "his property was clear." It was testified that at that meeting appellant said: "I have a statement here in my desk, I have looked at it, I have examined it." At that meeting an agreement was reached whereby the appellant was to deposit in escrow (subject to all taxes of record) an oil and gas lease covering 77 acres of the property, in which the respondent was to be named lessee, and respondent was to deposit in the escrow a deed conveying approximately 91 acres of land situated in Kings County to the appellant in lieu of the $5,000 cash deposit. It is this 91 acres located in Kings County which is the subject of the present action.

The court found that at the above-mentioned meeting of the parties the appellant represented to the respondent that the amount owed for taxes and penalties against the Monterey Park property did not exceed $8,000. The escrow was opened about the 27th day of April, 1939. Appellant deposited an oil and gas lease covering the Monterey Park property wherein the respondent was named as lessee. Respondent deposited a grant deed conveying the Kings County property to the appellant. The appellant deposited a quitclaim deed covering the Kings County property in favor of the respondent. The instructions were to the effect that the escrow holder was to record the grant deed conveying the Kings County property from respondent to appellant, then deliver the oil and gas lease to the respondent and, in the event an oil well was spudded in pursuant to the terms of the lease, the escrow holder was then to deliver the quitclaim deed covering the Kings County property to the respondent. In the event the respondent failed to spud in an oil well on the Monterey Park property within the time provided by the lease, the quitclaim deed covering the Kings County property was to be returned to appellant. The escrow instructions were later amended in respect to the title to the Kings County property, the grant deed conveying that prop-

erty to appellant was recorded, and the oil and gas lease was delivered to the respondent from escrow about August 5, 1939. Thereafter, about August 26, 1939, respondent entered into an agreement with one Prior whereby the latter agreed to cause a well to be drilled upon a portion of the premises described in the lease. About October 1, 1939, Prior obtained a title report which disclosed delinquent taxes in the amount of $12,334.94 (as found by the court and admitted by appellant in his answer) against the 87½ acres of land located in Monterey Park and owned by the appellant, which 87½ acres included the 77½ acres covered by the oil and gas lease. On October 2, 1939, Prior advised the respondent in writing of the reported amount of delinquent taxes against the property. Thereafter respondent made demand on appellant that he either reduce the taxes on the 77½ acres to $8,000 or place them on the ten-year plan. Appellant failed and refused to comply with this demand. Respondent then offered to sell a 1 per cent landowner's royalty in the 77½ acres under lease for the benefit of the appellant and to use the proceeds therefrom to place the taxes against the 77½ acres on the ten-year plan. The appellant refused this proposal.

By letter dated November 6, 1939, respondent authorized appellant to take from the escrow a quitclaim deed executed by respondent in favor of appellant, describing the property covered by the oil and gas lease, and demanded of appellant an order directing the escrow holder to deliver to respondent the quitclaim deed to the 91 acres in Kings County. It was stated that the demand was being made because appellant had represented to him that there was only $8,000 in taxes due on appellant's land and that respondent found over $12, 337.94 to be due since 1939. A few days after November 6, 1939, Burkholder and Spangler went to appellant's office in an effort to settle their differences. At that time the appellant told them "It is too bad for you that you didn't bring down the title before, . . . instead of taking his (appellant's) word."

Appellant suggested that they find an operator who would accept the lease with the incumbrances of record. A few days later the respondent and his associates introduced one Hudspeth to appellant. On November 16, 1939, a contract was drawn between Hudspeth as first party and the appellant, the respondent Brakhage, Spangler and Burkholder as parties of the second part. An assignment of lease was pre-

pared wherein the leased property was assigned to Hudspeth. Supplemental escrow instructions were prepared by the appellant wherein the respondent was required to warrant that there had been no representation on the part of the appellant that the respondent would not claim any right, title or interest in or to the Kings County property unless a well was actually spudded in and the surface casing landed on appellant's property in Monterey Park. No oil well was ever spudded in. The respondent did not sign the supplemental instructions. The contract and the assignment of the lease were never delivered by the appellant to either Hudspeth or the respondent. Thereafter, about April 20, 1940, respondent filed this complaint.

The trial court found that appellant "represented to . . . Brakhage that he had a good and merchantable title to the property and that the amount owed for taxes and penalties against the property did not exceed eight thousand dollars ($8,000.00)." Judgment was entered quieting respondent's title to the Kings County property.

█ Appellant now contends that the evidence does not support the findings above quoted. Although appellant testified that he did not so state, the finding in reference to the representation about the taxes is adequately supported as will be seen by an examination of the quoted evidence. Where there is a substantial conflict in the evidence the finding of the trial court will not be disturbed on appeal. (*Noll* v. *Baida,* 202 Cal. 98, 101 [259 Pac. 433]; *Raymond* v. *Glover,* 144 Cal. 548 [78 Pac. 3].)

█ The next argument is that the fraud of appellant, if any, was waived by respondent when he agreed to enter into a new contract with Hudspeth. We see no merit to this. In the first place facts in reference to the claimed waiver of the fraud were not pleaded nor was it shown that the agreement was ever delivered or that respondent had signed or agreed upon the final terms of the contract or with the final arrangements. It cannot be said that as a matter of law on this appeal the acts and conduct of respondent amounted to a waiver of the fraud of appellant contrary to the implied finding of the trial court on that subject. (*Schick* v. *Equitable Life Assurance Society,* 15 Cal. App. (2d) 28, 35 [59 P. (2d) 163].) Where subsequent acts are relied on as a defense in a case where fraud is clearly established, the acts must stand upon the clearest evidence and must evince a purpose to waive or

forgive the fraud, and must amount to a clear election not to rescind. (*Green* v. *Duvergey*, 146 Cal. 379 [80 Pac. 234].) Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.