[Civ. No. 21775. Second Dist., Div. Two. Nov. 9, 1956.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION et al., Plaintiffs and Respondents, v. LAMB FINANCE COMPANY, INC. (a Corporation) et al., Appellants; W. N. NEWTON et al., Cross-defendants and Respondents.

J. W. Ehrlich, N. E. Youngblood and Robert M. Maslow for Appellants.

Samuel B. Stewart, Hugo A. Steinmeyer, Robert H. Fabian and Richard G. Rypinski for Respondents.

FOX, J.—In an action to enforce payment of a promissory note, defendants appeal from a money judgment rendered upon a directed verdict of the jury in favor of plaintiff.

The fundamental issue presented is whether the court erred in not permitting certain defenses based on fraud to be tried by the jury. Other questions raised are (1) the propriety of the dismissal of defendants' cross-complaints at the time of trial without affording leave to amend, and (2) whether parol evidence is admissible to show an agreement between the payee of the note and a guarantor thereof, by which the former promised not to enforce the latter's liability thereon.

Plaintiff bank instituted the within action for the unpaid balance on a promissory note executed by defendant Lamb Finance Company. In its second count, the bank sought recovery against codefendant Leah Lamb Poyet, who had guaranteed, by a writing on the reverse side of the note, to pay the indebtedness evidenced by said note. Defendants answered with general denials and 11 affirmative defenses. Mrs. Poyet and the Lamb Finance Company filed cross-complaints against plaintiff, W. N. Newton, assistant manager of plaintiff's Hollywood main office, W. A. Angione, former president and director of the Lamb Finance Company, and F. J. McFarland, former accountant of the Lamb company. The cross-complaints primarily sought damages of $500,000 based on the alleged fraudulent activities of the cross-defendants in connection with certain transactions affecting the cross-complainants.

At the outset of the trial, while the parties were in the chambers of the court, the cross-defendants moved for dismissal of the cross-complaints on the ground that no cause of action was stated. Mrs. Poyet and the company moved for leave to amend. This latter motion was denied, the cross-defendants' motion was granted, and the cross-complaints dismissed. A motion to strike defendants' 11th affirmative defense was likewise granted.

Prior to the impanelment of the jury, plaintiff bank moved

for segregation of what it termed the legal and equitable issues. It requested that the court try without a jury the first, sixth, seventh and ninth affirmative defenses on the theory that these constituted equitable defenses on which defendants were not entitled to trial by jury. This motion was granted, the court directing that these defenses were to be tried by the court subsequent to the trial of the legal issues by the jury. After four days of trial, the jury was excused. Trial was then resumed before the court only on the four remaining defenses, two of which were grounded on fraud in the inducement or procurement of the note. At the conclusion of this phase of the trial, plaintiff moved for a directed verdict. The court granted said motion, recalled the jury and directed the return of a verdict for plaintiff. The court then signed and filed its findings and rendered judgment for plaintiff.[1] This appeal followed.

The main controversy involved in this appeal hinges on defendants' assertion that they were wrongfully deprived of their right to a jury trial on the issues raised in their first, sixth, seventh and ninth affirmative defenses. ▪ The right to a trial by jury is provided by article I, section 7, of the Constitution of California. This section has been judicially construed as guaranteeing the right to a trial by jury in actions at law of issues which were triable by jury at common law in 1850. (*People* v. *One 1941 Chevrolet Coupe,* 37 Cal.2d 283, 286-287 [231 P.2d 832].)

In *Ripling* v. *Superior Court,* 112 Cal.App.2d 399 [247 P.2d 117], the court gives cogent expression to the principles determinative of a litigant's right to a trial by jury. These principles, as far as they are here germane, may be epitomized as follows: (1) If the gist of the action as framed by the pleadings is such that the issues raised were cognizable at law in 1850, a trial by jury is a matter of right; (2) even though the case involves equitable principles, if it is one where the common law courts could and would grant relief, trial by jury is preserved; (3) where law and equity possess concurrent jurisdiction to provide relief, the mere existence of a remedy in equity cannot operate to defeat a party's right to elect to proceed at law; (4) it is only where the issues to be tried are exclusively cognizable in equity that a suitor is

[1] The judgment was paid in full. It is not contended that such payment was made by way of compromise or settlement or under an agreement not to appeal. Such payment, therefore, does not preclude the right of appeal. (*Reitano* v. *Yankwich,* 38 Cal.2d 1 [237 P.2d 6].)

deprived of the right to a jury trial; (5) those issues that are legal in nature are triable to a jury (pp. 401-402, 407).

■ Where an action presents issues of both a legal and equitable nature, a party is entitled to trial by jury of any legal issue remaining after the equitable aspects of the case have been determined by the court. (*Connell* v. *Bowes*, 19 Cal.2d 870 [122 P.2d 456].)

Adverting now to the essential allegations of the affirmative defenses which the court removed from the jury's consideration, it plainly appears therefrom that defendants rely on plaintiff's fraud in the inducement of the execution of the note to defeat their liability thereon.[2] Out of the prolix and indiscriminate welter of allegations which have been incorporated into the answers with a noticeable disregard for the niceties of pleading or the precepts of grammar, these significant facts may be culled: That defendant Leah Lamb Poyet was one of the incorporators and later sole stockholder in defendant Lamb Finance Company (sometimes referred to as the company) in January, 1952. W. A. Angione became president and a director of the company in March, 1952. and became acquainted with Mrs. Poyet's financial worth. Angione advised her to transfer certain personal bank accounts and the company's bank account to the Hollywood main office of plaintiff bank upon representations that he had known W. N. Newton, the assistant manager thereof, for many years and that Newton would deal fairly and honestly with her. Unknown to Mrs. Poyet at the time, Angione had informed Newton that he was advising Mrs. Poyet to transfer her deposits to his bank and it was arranged that Newton would ingratiate himself with Mrs. Poyet and Angione would induce her to establish her account in Newton's branch and under his control. On March 3, 1952, Angione introduced her to Newton at plaintiff's Hollywood branch office. Newton told her he would personally arrange to make her deposits in her account and would extend various courtesies to her. Mrs. Poyet thereafter opened her personal account at the Hollywood branch and also transferred $50,000 in cash in an account opened for defendant company, which Mrs. Poyet told Newton was not to be used until a permit was issued by the Corporation Commissioner. Newton assured Mrs. Poyet that he would see to it that she and the company would at

---

[2]Duress and coercion are included in the defenses removed from the jury.

all times be protected. He also advised her that Angione was extremely reliable and a man of integrity. Relying on such representations, she left the company's matters entirely in Angione's hands. Thereafter, pursuant to a conspiracy between them and unknown to Mrs. Poyet, Newton permitted Angione to overdraw the company's account in approximately $20,000. Thereafter, on Newton's representation that the company's business was good, that Angione was managing the business well and that the bank would approve a line of credit to the company in the amount of $200,000, a promissory note was executed by Mrs. Poyet on behalf of the company in favor of the bank in the sum of $50,000, Newton stating he would credit this sum to the company's account. Newton also procured her to sign the note as guarantor, stating the bank would never hold her personally liable but would liquidate the note out of the line of credit to be advanced. Newton failed to disclose that Angione had overdrawn the account at the time the note to the bank was executed. Thereafter, the note was periodically renewed upon maturity, Newton failing to advise her that Angione had again overdrawn the company account, and assuring her that the bank would extend the credit applied for although the application had in fact been denied. It is alleged that had defendants known the true state of affairs which Newton misrepresented and concealed, the various notes would not have been executed or renewed.

Before pursuing the principal questions postulated by this appeal, it is pertinent to observe that during a colloquy with the judge on the second day of the trial, defendants' counsel, in open court, unequivocally conceded the liability of the defendant company on the note. It is not contended that this express concession was made improvidently or in an unguarded moment, or that it should be given any other meaning or effect. ■ In the absence of fraud, the admissions of an attorney in open court are binding upon the client. (*Bias* v. *Reed*, 169 Cal. 33, 37 [145 P. 516]; *Taylor* v. *Randall*, 5 Cal. 79, 80; *People* v. *Hammond*, 26 Cal.App.2d 145, 150 [48 P.2d 1172].) ■ The effect of this admission was to eliminate from the case any issue of the company's liability on the note. (*Scafidi* v. *Western Loan & Bldg. Co.*, 72 Cal. App.2d 550, 561-562 [165 P.2d 260].) Its liability being conceded, the company cannot on appeal be heard to say that it suffered prejudice in being denied trial by jury upon an issue that was removed from the case by its own concession.

(See *Dale* v. *City Court of Merced,* 105 Cal.App.2d 602, 606-607 [234 P.2d 110].) The subsequent discussion of whether the court erred in not permitting the defense of fraud in the inducement to be tried by the jury is consequently limited to Mrs. Poyet.

In support of the trial court's removal of the issues referred to from the jury, plaintiff contends that the "constitutional right to a jury trial did not extend to the equitable issues of fraud raised in the answers." It argues "that the defense of fraud in the inducement asserted to defeat an obligation on a contract raises issues solely equitable in nature." This position is manifestly untenable.

The underlying fallacy permeating plaintiff's argument is its contention that where fraud in the inducement of an instrument, as distinguished from fraud in its execution, is interposed by way of defense to the enforceability of the instrument, the issues thereby presented are exclusively cognizable in equity. This is without historical foundation. ■ Equity jurisdiction is not automatically conferred by a mere charge of fraud made affirmatively or defensively. (*Casaretto* v. *DeLucchi,* 76 Cal.App.2d 800, 808 [174 P.2d 328].) From earliest times, law and equity have exercised concurrent jurisdiction in diverse types of controveries to suppress and relieve against fraud. "Again, it hath been said that fraud, accident and trust are the proper and peculiar objects of a court of equity. But every kind of *fraud* is equally cognizable, and equally adverted to in a court of law. . . ." (Cooley's Blackstone (4th ed.), vol. II, book III, p. 1178.) Lord Mansfield, in the case of *Bright* v. *Eynon* (1 Burrow, 391, 395), remarks "fraud or covin may, in judgment of law, avoid every kind of act." That case was a suit upon a note, to which defendant interposed a written discharge. Lord Mansfield granted a new trial so that the jury might consider whether the discharge was obtained from the payee by fraud and imposition. Chief Justice Kent, in delivering the opinion of the court (in 1813) in the case of *Jackson ex dem. Gilbert* v. *Burgott,* 10 John. (N.Y.) 457, says "courts of law have concurrent jurisdiction in all cases of fraud. Fraud will invalidate in a court of law as well as in a court of equity and annul every contract and every conveyance infected with it." (P. 462.) In 1838, speaking for the Supreme Court of the United States in the case of *Swayze* v. *Burke,* 12 Pet. (U.S.) 11 [9 L.Ed. 980]), Mr. Justice McLean states:

"That fraud is cognizable in a court of law as well as in a court of equity is a well established principle. It has been often so ruled in this court." In *Crane* v. *Bunnell*, 10 Paige (N.Y.) 333, an action at law had been brought on a note, to which the defense was asserted that it had been procured by fraudulent misrepresentations regarding a land transaction. Defendant then filed a bill in chancery alleging the same fraudulent misrepresentations as a basis for cancelling the note and enjoining the action at law. The chancellor, conceding he possessed concurrent jurisdiction in cases of fraud, refused to allow the cause to be removed from the court of law which had first taken cognizance. He pointed out that fraud in the inducement in making the note was equally available as a defense in the suit at law, where the parties could have the benefit of a jury trial (p. 340). In *Dutil* v. *Pacheco* (1863), 21 Cal. 438 [82 Am.Dec. 749], our Supreme Court dismissed a bill in equity to set aside a judgment in an action growing out of a fraud inducing the sale of property. The court observed that such fraud was a defense which could have been raised in the action at law in which the judgment was rendered.

It is clear that having pleaded fraud defensively to avoid her apparent obligation on the note, Mrs. Poyet was entitled to trial by jury of the issue so raised. The general rule is stated in 50 Corpus Juris Secundum, Juries, page 759, as follows: "As respects the right to a jury trial, courts of law and courts of equity both have jurisdiction of the issue of fraud in proper cases, and, where the facts constituting the fraud and the relief sought are cognizable in a court of law, the parties are entitled to a jury trial; but, where the case made by the pleadings involves the application of the doctrines of equity and the granting of relief which can be obtained only in a court of equity, the parties are not entitled to a jury trial. So, where fraud is pleaded as a defense in an action at law, the issue is triable by the jury, and in a suit in equity, by the court." Professor Pomeroy, in volume III of his treatise on Equity Jurisprudence (5th ed.), remarks (§ 872, p. 419): "Fraud in some of its phases, has long been an occasion for the exercise of jurisdiction both in law and in equity. The various reliefs on the ground of fraud which are possible from the nature of the legal and equitable modes of procedure and remedies are the following:

"At law . . . 2. The affirmative relief whereby the defrauded party suffers the transaction to stand and by action

recovers pecuniary damages as compensation for the injury maintained by him from the deceit; 3. Defensive relief, whereby the party sets up the fraud as a defense, and thereby defeats any action brought to enforce the apparent fraudulent obligation.''

The defense of fraud in the inducement to defeat an apparent contractual obligation or to avoid the effect of various types of written instruments is well recognized in California as raising a legal issue triable before a jury. In *Kearney* v. *Bell*, 160 Cal. 661 [117 P. 925], plaintiff sued on an account stated. Defendant's answer contained a defense that she had been induced to execute the account stated by virtue of plaintiff's false representations. At the outset of the trial by jury, plaintiff's motion that the court alone try what he termed the equitable defense of fraud was denied. This ruling was urged as error upon the appeal. In repelling plaintiff's argument, the court observed (p. 663) : "An account stated is a contract, and like any other contract may be avoided by showing that the assent of one party thereto was procured by the fraud of the one seeking to enforce the contract. Such a defense is a legal and complete defense. . . . The action upon an account stated is an action at law, and we know of no reason why the defense that the defendant's assent to the account stated was procured by fraud may not be passed upon by the jury, under the instructions of the court. This is what was done in this case, and there was no error in so doing.''

In *Ito* v. *Watanabe*, 213 Cal. 487, 488 [2 P.2d 799], plaintiff sued for the balance of the purchase price under a contract for the sale of a business. Defendant's answer alleged fraudulent misrepresentation inducing the making of the contract, partial failure of consideration, and a prior notice of rescission. Eleven special interrogatories were submitted to the jury, four of which related to the alleged fraudulent misrepresentations, upon which the jury found in defendant's favor. Plaintiff moved the court to disregard this verdict and enter judgment in his favor, which it did. In support of the court's disregard of the jury's verdict, plaintiff maintained that the answer raised only equitable issues, a jury trial was unnecessary, and its verdict only advisory. The court stated: "The present action is brought by the seller for the balance of the purchase price, and the buyer is defending on the ground of fraud, and alleging a prior rescission. . . . Fraud is the issue, and, as raised in this case, it is a legal issue. No

equitable doctrine is involved and no equitable remedy is sought [citation]."

In *Johnstone* v. *Morris,* 210 Cal. 580 [292 P. 970], plaintiff brought an action on a promissory note. Defendant's answer alleged that he had been defrauded of $15,000 by plaintiff and set this up by way of counterclaim. Defendant also filed a cross-complaint, alleging the note had been given upon dissolution of a partnership during which time plaintiff and his wife had misappropriated funds belonging to the partnership. Plaintiff demanded an accounting to determine the exact amount misappropriated and prayed damages for the difference between the amount misappropriated and the amount due on the note. The trial court, over plaintiff's protest, granted a jury trial on all the issues. The Supreme Court held that the action was cognizable at law, that fraud was a defense to the note and that trial by jury was proper.

*Landreth* v. *Ducommun,* 8 Cal.2d 694 [68 P.2d 231], offers an interesting parallel to the matter before us. There, plaintiff sued upon a promissory note. Defendant's answer relied principally upon fraud in the inducement as a bar to his liability upon the note. Upon plaintiff's motion the court directed the jury to render a verdict in her favor. Upon appeal defendant claimed that there was sufficient evidence of fraud to require submission of the case to the jury. The Supreme Court held it to be reversible error to direct a verdict for plaintiff where the state of the record warranted the jury's determination on the issue of fraud in the inducement.

In *Wilson* v. *San Francisco-Oakland Terminal Rys.,* 48 Cal.App. 343 [191 P. 975], plaintiff brought an action to recover for personal injuries. Defendant pleaded a release executed by plaintiff as a defense to the action. Plaintiff offered to prove the release was obtained from him by various fraudulent misrepresentations of defendant's agents. The court refused to entertain such evidence and directed the jury to enter a verdict for defendant. Upon appeal the case was reversed, the court holding that the question of whether the release was obtained through the fraud alleged is a question for the jury.

The authorities and texts referred to unmistakably establish that where fraud in the inducement is relied upon as a defense to a legal demand based upon a simple contractual

obligation, the issue thus raised is properly triable to a jury.[3] For the proposition that only equity can vitiate a contract where fraud occurred in its inducement, plaintiff relies upon *Hartshorn* v. *Day*, 19 How. (U.S.) 211 [15 L.Ed. 605], and *George* v. *Tate*, 102 U.S. 564 [26 L.Ed. 232]. The Hartshorn case related to a sealed assignment of a patent; the George case to a bond. These instruments were specialties at the common law. In each case it was held that fraud relating to the consideration for the sealed instrument could not be shown in an action at law. In the George case, which cites the earlier decision, the court said: "It is well settled that the only fraud permissible to be proved at law *in these cases* is fraud touching the execution of the instrument. . . ." (Italics added.) It is clear from the italicized language that the rule announced applies to contracts falling within the class of sealed instruments or specialties, which enjoyed a peculiar sanctity at common law. This limited interpretation of the language in the George and Hartshorn cases is, after close analysis, set out in *American Sign Co.* v. *Electro-Lens Sign Co.,* 211 F. 196, where the court notes that all of the cases cited involved contracts under seal. As pointed out by Professor Ames in 9 Harvard Law Review 49, a seal was a sacred thing at common law. It showed that the document to which it was attached was executed with studied formality and could not be lightly abrogated. The seal was accorded such reverence, that neither fraud in the inducement, illegality, payment of the obligation, or failure of consideration would be heard as a defense in an action at law upon sealed contracts. (9 Harv.L.Rev. 49, 51-54.) Such considerations do not prevail in this contemporary age in an action on a promissory note, since distinctions between sealed and unsealed instruments have been abolished (Civ. Code, § 1629.) Thus, fraud in the inducement is available as a defense against the holder, not in due course, of a negotiable instrument. (*Landreth* v. *Ducommun,* 8 Cal.2d 694, 699 [68 P.2d 231].) In the American Sign Company case, *supra,* the court held that fraud in the inducement interposed by way

---

[3]Plaintiff has cited no California authority to the contrary. On the other hand, the reports are replete with cases in which jury trials are granted in causes where fraud in the inducement has been raised as a defense to a simple contract. In addition to *Landreth* v. *Ducommun, supra,* reference may be made to cases where such defense was tried to a jury in actions to enforce a promissory note. (*Simon Newman Co.* v. *Lassing,* 141 Cal. 174 [74 P. 761]; *Conner* v. *Butler,* 113 Cal.App. 502 [298 P. 546]; *J. B. Colt* v. *Freitas,* 76 Cal.App. 278 [244 P. 916].)

714

of defense to an action on a promissory note raises issues cognizable at law. This case is cited as authority for the same proposition in *Ito* v. *Watanabe,* 213 Cal. 487, 489 [2 P.2d 799].

█ Plaintiff asserts that by reason of the prayer, the litigation was transmuted into an equitable proceeding, citing *First Nat. Bank* v. *Superior Court,* 71 Cal.App. 64 [234 P. 420]. The case cited was one in which a proceeding originally commenced as an action at law was transformed by subsequent pleadings into a suit in equity for a partnership accounting and for the termination of the partnership relationship. The prayer in the instant action does not require the invocation of equitable relief or remedies. The prayer "for the sum of $500,000.00 as damages" is a request for a money judgment based on allegations sounding in tort and which, if established, would constitute a counterclaim predicated on deceit. Both the remedy pursued and the relief asked are legal in nature. It is also prayed that "plaintiff take nothing by its action" and that defendants "be released of any and all liability by reason of the notes, endorsements and guaranties." It is suggested that the latter is a prayer for affirmative relief and indicates the equitable character of the action. A similar contention was repelled in *Locke* v. *Moulton,* 108 Cal. 49, 52-53 [41 P. 28], where the court points out that the essential relief sought by defendant is that plaintiff take nothing by the action. A judgment that plaintiff take nothing would effectively release Mrs. Poyet of liability as guarantor and guaranty.

█ It is also urged that even if the issue of fraud had been tried to the jury, the court would have been justified in directing a verdict for plaintiff because "there was no competent evidence of fraud introduced sufficient to justify sending the case to the jury." Having read the voluminous evidence and having examined the numerous exhibits introduced, we are convinced that there was substantial evidence upon which the jury might have found that Mrs. Poyet was a victim of fraud in executing the notes in question. There was evidence that Newton told Mrs. Poyet that the money deposited in the company's account would not be used until a stock permit had been issued, that Newton would keep her informed of any irregularities in the company's accounts, that prior to the execution of the first note Newton failed to inform her that Angione had overdrawn the company's account, that Newton instead told her the company was in good condition, and that Newton assured Mrs. Poyet that the bank intended

to extend a line of credit to the company at a time when he knew credit had been denied. Mrs. Poyet testified that not until February, 1954, did she learn that the company's account was overdrawn over $20,000 as of August 6, 1952. The jury might have believed, in the light of such evidence, that but for Newton's misstatements and concealments on these subjects peculiarly within his knowledge, which cast the financial position of the company in a more favorable light than was warranted by the facts known to Newton, Mrs. Poyet would not have executed the instrument on which her liability is predicated. (*Landreth* v. *Ducommun, supra,* p. 699.)

Since Mrs. Poyet was deprived of a jury trial to which she was entitled, the judgment adverse to her must be reversed. Although defendant company is concededly liable on the note, its cross-complaint for damages was as will be subsequently developed, improperly stricken and must be reinstated as against plaintiff bank. ▮ Until all issues raised by the cross-pleadings against plaintiff are adjudicated and the action finally disposed of, the judgment against defendant company is obviously premature and, if it should prevail in the cross-action, clearly incorrect. (See *Moss Const. Co.* v. *Wulffsohn,* 116 Cal.App.2d 203, 205 [253 P.2d 483].) Therefore, the judgment against defendant company should likewise be reversed, to await final disposition of all the issues of law and fact raised by the cross-complaint and the rendition of a single judgment determinative of the rights of the parties in relation to the matters in controversy. It is well settled that litigation is not to be tried piecemeal and that the general rule is that there can be only one final judgment in an action. (See *Nicholson* v. *Henderson,* 25 Cal.2d 375, 381 [153 P.2d 945] ; *Moss Const. Co.* v. *Wulffsohn, supra; Vallera* v. *Vallera,* 64 Cal.App.2d 266, 270 [148 P.2d 694].)

It might be useful, in the event of a new trial, to consider defendants' assignment of error based on the court's exclusion of evidence offered by Mrs. Poyet for the purpose of proving an alleged oral agreement, made on the part of Newton at the time of the execution of the note, to the effect that her guaranty was a matter of form and no personal liability would attach to her as a result of the transaction. The court properly sustained plaintiff's objection to the reception of such testimony, which contradicted the plain language of the guaranty signed by Mrs. Poyet, as incompetent under the parol evidence rule. In *Newmark* v. *H. & H. Products Mfg. Co.,*

128 Cal.App.2d 35, 37 [274 P.2d 702], this court stated: "Parol evidence of fraud to establish the invalidity of a written instrument induced by a promise made without any intention of performing it is only permissible in the case of a promise to do some additional act which was not covered by the terms of the contract and such evidence is not admissible in the case of a promise directly at variance with the terms of the written instrument. [Citations.]'' ██ It is well settled that the maker or guarantor of a promissory note which is unambiguous as to his liability thereon is precluded from showing an oral agreement accompanying the signing of the instrument that he would never actually be called upon to pay it. (*Shyvers* v. *Mitchell*, 133 Cal.App.2d 569, 572-574 [284 P.2d 826]; *Shaw* v. *McCaslin*, 50 Cal.App.2d 467, 471 [123 P.2d 102]; see *Bank of America* v. *Pendergrass*, 4 Cal. 2d 258, 263 [48 P.2d 659].) The case of *Shyvers* v. *Mitchell*, *supra*, is squarely in point. The court below admitted oral evidence that at the time respondent signed a promissory note as guarantor, one Partridge, president of the payee bank, represented that respondent would never be held liable thereunder. One of appellant's contentions on appeal was that the court erred in admitting Partridge's statements that respondent would not be required to pay the note he guaranteed. This contention was sustained, the court stating (pp. 573-574): "We think it is clear that evidence of the promises of Partridge hereinbefore set forth could not properly be received or considered as constituting a defense to the action, for to do so would, in our opinion, violate the parol evidence rule. While it may be true that 'where the execution of a contract has been induced by a promise made without any intention of performing it, this constitutes such fraud in obtaining the contract that it may be declared null and void' [citation], yet when that promise which, because it is squarely against the terms of the writing, does by its very nature, if counted on, supersede that writing, then, even though it be made with intent on the part of the promisor that the promise will not be kept, evidence of it can neither be received nor counted upon to support a finding of fraud. [Citation.] If the judgment in the instant case depended upon the admission of the promises of Partridge we would be required to hold that it was reversible error to admit them and that the judgment was without evidentiary support.'' That states the rule here applicable.

Defendants also contend that it was error for the trial court to dismiss their cross-complaints on the ground that they failed to state a cause of action, without affording them an opportunity to amend their pleadings. As has been stated, defendants filed cross-complaints against the bank and joined as new parties therein cross-defendants Angione, Newton and McFarland. On September 28, 1955, the motions of each of the cross-defendants to dismiss the cross-complaints were granted with an award of costs except as to plaintiff. The order embodying this ruling was entered in the permanent minutes on September 30, 1955, there being no direction that a written order be filed. (Rules on Appeal, rule 2(b)(2).)

 Where the parties to the cross-complaint are not identical with the parties to the original action, the order dismissing the cross-complaint amounts to a final adjudication between the cross-complainants and the new parties joined by the cross-complaint and is an appealable judgment. (*Keenan* v. *Dean,* 134 Cal.App.2d 189, 191 [285 P.2d 300]; *Herrscher* v. *Herrscher,* 41 Cal.2d 300, 303 [259 P.2d 901]; *Kennedy* v. *Owen,* 85 Cal.App.2d 517, 520 [193 P.2d 141].)

 Defendants have never appealed from this order. Therefore, as to cross-defendants Angione, Newton and McFarland such judgment has become final, the time for appeal therefrom having elapsed. As to these parties the purported appeal must be dismissed.[4]

As to the plaintiff bank, the rulings dismissing the cross-complaints, striking Mrs. Poyet's eleventh affirmative defense and denying defendants' motions to amend their cross-complaints were interlocutory in character. Since the judgment in favor of plaintiff bank must be reversed and the cause remanded for a new trial of part of the issues, these interlocutory rulings are, of course, set aside and the parties restored to the position in which they found themselves at the outset of the proceedings, except as qualified by the opinion and judgment herein rendered. (*Hall* v. *Superior Court,* 45 Cal.2d 377, 381 [289 P.2d 431].) So far as concerns Mrs. Poyet, the order striking her eleventh affirmative defense was clearly erroneous. That defense is essentially a counterclaim on the part of Mrs. Poyet for recoupment of damages sustained by her as a result of plaintiff's alleged fraud. It was the proper subject of a counterclaim under section 438 of the Code of Civil Procedure. (*Johnstone* v. *Morris,* 210 Cal. 580,

---

[4]The only appeal taken is from the judgment in favor of the bank.

587 [292 P. 970] ; *Bechtel* v. *Baglieto,* 13 Cal.App.2d 495, 499 [57 P.2d 192].)

Apart from certain criticisms directed to the insufficiency of the cross-complaints to state the requisite elements of actionable fraud, which could ordinarily be supplied by amendment, plaintiff asserts that the pleadings are, in effect, incurably defective because of certain admissions and allegations destructive of defendants' cause of action predicated on fraud. It contends that the pleadings affirmatively show that Mrs. Poyet discovered the alleged fraud prior to the execution of the renewal note in October, 1953. It urges that by renewing the notes with knowledge of the antecedent fraud, she ratified the prior transactions and waived the fraud. It is true that there are numerous cases holding that the renewal of a note with full knowledge of the exercise of fraud in procuring the original may estop the maker from denying the obligation on that ground. However, the allegations of the lengthy pleadings, which need not be discussed in detail, negative the argument that Mrs. Poyet was in full possession of the facts constituting the frauds charged at the time the renewal was executed. There are allegations that Mrs. Poyet did not discover the full extent of Newton's alleged duplicity, misrepresentations and fraudulent concealment of the truth until after the note was last renewed. One example is Newton's statement to her that the bank was granting the company a line of credit far in excess of the amount of the note and that capital would thus be available to pay off the face of the note. Newton reiterated this statement when the note was renewed in October, 1953, and also concealed the fact that the bank had previously rejected the application, a fact that Mrs. Poyet did not discover until November or December, 1953. Furthermore, accepting, as we must, the veracity of this allegation, it would thus appear that fraud infected the renewal of the guaranty. The principle governing guaranty contracts is thus stated in *American Nat. Bank* v. *Donnellan,* 170 Cal. 9, 22-23 [148 P. 188, Ann.Cas. 1917C 744] : " 'The contract of surety imparts entire good faith and confidence between the parties in regard to the whole transaction. Any concealment of material facts, or any express or implied misrepresentation of such facts, or any undue advantage taken of the surety by the creditor, either by surprise or by withholding proper information, will undoubtedly furnish a sufficient ground to invalidate the contract.'

(Story's Equity Jurisprudence, § 324.) 'If the creditor conceal any fact unknown to the proposed surety which, had he known it, would have deterred him from becoming surety . . . it is fraud upon him and relieves him from obligation. Especially is this so where the obligation is entered into at the request of the person to whom the security is given.' [Citation.]''

It is asserted, however, that the pleadings show that Mrs. Poyet discovered some elements of the claimed fraud prior to the execution of the renewal note here sued upon, and that ''these earlier discoveries would put Mrs. Poyet upon inquiry and would charge her with all knowledge which a diligent investigation would have discovered.'' This claim is without merit as a statement of a proposition of immutable law. ▮ As stated in *French* v. *Freeman*, 191 Cal. 579, 589 [217 P. 515] : ''We cannot say as a matter of law that when plaintiff discovered the shortage of chickens he was put on constructive notice as to the other frauds. The rule that a person who has discovered that he has been cheated in one particular is put on inquiry as to other possible frauds must be applied with reference to all the circumstances of the case, and is, of course, a question for the trial court to determine.''

A more significant infirmity in plaintiff's attack on the sufficiency of the cross-complaints, however, stems from its suggestion that the allegations respecting discovery of the fraud and subsequent renewal of the notes compel the conclusion that defendants waived fraud as a defense. ▮ However, whether there was an implied waiver of the defense of fraud is not ordinarily decided as a matter of law but is essentially a question of intention—an issue of fact which can be resolved only when the trier has before it the evidence bearing on that issue. In *French* v. *Freeman, supra* (p. 590), the rule is thus stated: ''The question of waiver or nonwaiver was one of fact for the trial court to pass upon, and the acts or conduct which defendant claims constituted said waiver were the evidence to be considered in determining the ultimate fact of waiver or nonwaiver . . . Whether or not a person has ratified a voidable contract, or elected to affirm it rather than to rescind it, depends primarily on his intention, and this is shown by his declarations, his acts, or his conduct, which are matters of fact. The question is, therefore, a question of fact for the determination of the jury.'' In *Conner* v. *Butler*, 113 Cal.App. 502, 514 [298 P. 546], it is said: ''The

defense to the note on the ground of fraud was not waived by the mere renewal of the note. There is a conflict of evidence regarding the defendant's knowledge of alleged fraud at the time he renewed the note . . . 'Ratification of a fraudulent transaction can only be made where there is a full knowledge of the facts constituting the fraud [citation] and depends primarily on the intention of the party as shown by his declarations, acts and conduct [citation].' '' In *Chung* v. *Johnston,* 128 Cal.App.2d 157, 164 [274 P.2d 922], the court states: ''In the case of fraud the courts are reluctant to spell out a ratification unless the evidence thereof is clear . . . Waiver of fraud is a question for the determination of the trier of fact. [Citation.] No general rule fits all cases. The question whether acts of the defrauded party do or do not constitute a waiver must be determined in connection with the circumstances of each case [citation].'' It has been said that a claimed waiver of fraud by the subsequent acts of the party imposed on ''ought to be watched with the utmost strictness, and to stand only upon the clearest evidence of an act done with all the deliberation that ought to attend a transaction the effect of which. is to ratify that which in justice ought never to have taken place.'' (*Green* v. *Duvergey,* 146 Cal. 379, 391 [80 P. 234].) It cannot be said as a matter of law from the pleadings that Mrs. Poyet had full knowledge of the facts and clearly intended to waive the alleged antecedent fraud at the time she renewed the notes. (See *Brakhage* v. *McCaslin,* 52 Cal.App.2d 382, 386 [126 P.2d 378].) On the contrary, the matter of waiver was an issue of fact to be decided by the jury after a consideration of all the circumstances of the particular case. (*Hefferan* v. *Freebairn,* 34 Cal.2d 715, 722 [214 P.2d 386]; *Friedberg* v. *Weissbuch,* 135 Cal.App.2d 750, 756 [287 P.2d 785]; *Lobdell* v. *Miller,* 114 Cal.App.2d 328, 338 [250 P.2d 357].) For the foregoing reasons the cross-complaints were not vulnerable to a general demurrer.

 It is not amiss at this point to comment on the draftsmanship reflected by defendants' pleadings, which were not authored by present counsel. The cross-complaints are most egregious examples of maladroit pleading, being overfreighted with surplusage, and in places obscure, ambiguous, equivocal and confusing. Some of the language which plaintiff relies upon and narrowly construes as purported admissions that Mrs. Poyet discovered certain matters relating to the frauds charged at a time earlier than that to which she testified under

oath, may as readily be the product either of tangled syntax or inadvertent mistake or general ineptness in stating facts. In dismissing the cross-complaints without allowing an opportunity to amend, the judge stated: ''The reason for the court's ruling is simply this: This is a trial department, and this case has come in here and it is claimed to be at issue by all of the parties. It has come here for trial. This is a trial department. That is the reason.'' Defendants' pleadings were never amended and present counsel was never given an opportunity to clarify ambiguities, amend insufficiencies, eliminate surplusage or explain mistaken statements, if any. After reversal, on appeal, the trial court may, in its discretion, permit such amendment of the pleadings as may be proper and appropriate. (*Holt* v. *Morgan,* 128 Cal.App. 2d 113, 118 [274 P.2d 915] ; *Mitchel* v. *Brown,* 78 Cal.App.2d 58, 62 [176 P.2d 957] ; *Heidt* v. *Minor,* 113 Cal. 385, 388 [45 P. 700].) Such an opportunity should be afforded, particularly with respect to explanation of any purported admissions shown to be the result of excusable inadvertence or unfortunate choice of phraseology. (See *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 386 [267 P.2d 257] ; *Jorgensen* v. *Dahlstrom,* 53 Cal.App.2d 322, 330-331 [127 P.2d 551] ; *Jackson* v. *Pacific Gas & Elec. Co.,* 95 Cal.App.2d 204, 211 [212 P.2d 591].) The controlling philosophy underlying this latter consideration is well expressed in the Jackson case, last cited, as follows: ''We think the correct rule with respect to reference to former pleadings which have been substituted by amended pleadings filed by leave of court is that the abandoned and substituted pleadings may be considered only for certain limited purposes, but not to bind the pleader to an untrue and erroneous admission against interest which was inadvertently contained therein, but which has been subsequently disavowed and corrected in an amended pleading filed by leave of court, in which, or accompanying which, satisfactory explanation is made of the reason which caused the original erroneous statement. Otherwise, it would be useless and futile to correct an innocent mistake of fact by stating the truth with respect thereto and explaining the cause of the erroneous statement. The primary function of our courts of justice is to ascertain the truth and real facts of a case and to administer justice accordingly. If courts were to bind litigants to inadvertent untrue statements of facts and forbid them the inherent right to correct the false by substituting the true facts, they would

become partisans to miscarriages of justice. Our courts not only permit, but strive to elicit, the true facts of all cases, and to render justice by applying the law to such facts."

The judgment in favor of plaintiff bank is reversed and the cause remanded for a new trial of the issues raised by plaintiff's second cause of action against defendant Poyet and her answer thereto and for a trial of the issues raised by the cross-complaints of defendants Poyet and Lamb Finance Company. The trial court is directed to consider such application as may be made for an amendment to the pleadings. As to cross-defendants W. N. Newton, W. A. Angione and F. J. McFarland, the purported appeal is dismissed.

Moore, P. J., and Ashburn J., concurred.