[Civ. No. 23223.   Second Dist., Div. One.   Jan. 7, 1959.]

JESS E. METCALF, Respondent, v. J. W. SHAMEL et al.,
Appellants.

Von Herzen & Laidig, Walter H. Young and Ernest L. Graves for Appellants.

Dunlap, Holmes, Ross & Woodson and John W. Holmes for Respondent.

FOURT, J.—This is an appeal from a judgment that there was owing to plaintiff Jess E. Metcalf the principal sum of $51,624.20 plus interest on account of the indebtedness of defendant Lite Products Sales, Inc. (hereinafter called Products) ; that said indebtedness constituted a lien upon the 49 per cent of the 500 shares of the capital stock of defendant Products owned by the defendant J. W. Shamel; and that said lien and pledge be foreclosed by the sale of all right, title and interest of defendant Shamel in and to said shares of the capital stock of Products or so much thereof as shall be necessary to defray the costs and expenses of sale and costs of suit to satisfy the said indebtedness out of the proceeds thereof, paying the balance of any proceeds to defendant Shamel.

The defendant J. G. Moser is an attorney and the pledgeholder of the capital stock of Products. His answer is in effect a disclaimer, and he is a nominal party only insofar as this appeal is concerned.

Shamel pleaded that the pledge, if ever made, was either invalid or had been terminated or superseded; that no debt was outstanding for said pledge to secure; and that in the transactions surrounding the giving of the pledge, Metcalf had defrauded Shamel and was not in court with clean hands.

The trial court heard considerable testimony (including expert testimony), received into evidence many exhibits, including many documents prepared by certified public accounts, and made extensive findings of fact, the more significant of which are set forth below in a footnote.[1]

---

[1]12. On and subsequent to August 3, 1951, to and including June 1, 1953, Metcalf loaned to Products at various times and in various amounts a total of $298,421.06, evidenced by promissory notes bearing interest at the rate of 4 per cent per annum, compounded annually, as follows:

| | |
|---|---|
| August 3, 1951 | $ 10,000.00 |
| August 21, 1951 | 5,000.00 |

Appellants have not contended that the findings of fact and conclusions of law were not sufficient to support the judgment; nor have they contended that there was no legally sufficient evidence to support the findings. In this respect

| | |
|---|---:|
| September 10, 1951 | 7,000.00 |
| September 17, 1951 | 10,000.00 |
| October 3, 1951 | 5,000.00 |
| October 5, 1951 | 6,756.64 |
| October 10, 1951 | 35,000.00 |
| November 1, 1951 | 5,000.00 |
| November 14, 1951 | 10,000.00 |
| December 4, 1951 | 6,664.42 |
| December 4, 1951 | 10,000.00 |
| December 21, 1951 | 5,000.00 |
| January 10, 1952 | 10,000.00 |
| January 17, 1952 | 10,000.00 |
| February 1, 1952 | 10,000.00 |
| February 25, 1952 | 25,000.00 |
| June 5, 1952 | 5,000.00 |
| July 30, 1952 | 30,000.00 |
| December 23, 1952 | 10,000.00 |
| March 12, 1953 | 21,000.00 |
| March 30, 1953 | 15,000.00 |
| April 30, 1953 | 10,000.00 |
| April 30, 1953 | 5,000.00 |
| May 14, 1953 | 12,000.00 |
| June 1, 1953 | 20,000.00 |
| Total | $298,421.06 |

14. As of June 29, 1955, Products, for valuable consideration, executed and Metcalf accepted a chattel mortgage of assets of Products to secure the repayment to Metcalf of the last $115,377.12 principal amount of said loans made by Metcalf as aforesaid. Plaintiff has elected to exclude the said portion of said loans from the debt secured by said agreement of August 3, 1951.

15. In accordance with said election, and after deducting all repayments, the unpaid principal amount of said indebtedness, including compounded interest, that is secured by said agreement of August 3, 1951, as of January 31, 1957, is $51,624.20. Said amount bears interest at the rate of 4 per cent per annum compounded annually. Simple interest accrued thereon to and including January 31, 1957, is $2,591.93.

18. That said letter agreement of April 30, 1952 was not intended by either Metcalf or Shamel at the time it was made to take the place of or to amend or modify the said agreement of August 3, 1951, and it did not do so.

19. As between the parties hereto, Metcalf is the owner of 51 per cent and Shamel is the owner, subject to said pledge, of 49 per cent of the outstanding stock of Products and, in like percentages and on said condition, of the preemptive right to any stock of Products or Rental hereafter issued.

44. Separate records and books of account were kept for each of the three corporations in accordance with standard bookkeeping and accounting practices and reflect the business transactions of said corporations, including all transactions between and among the said corporations and transactions between each of the said corporations and Metcalf and Shamel. Said records and books of account have at all times from and

appellants are to be commended because our own independent review of the transcript and exhibits has indicated that as to almost everything which occurred from and after January 1,

including March 31, 1953, been kept under the general supervision of Rubin, Rosman and Borak, certified public accountants.

45. The prices charged to Flasher and credited to Products and Rental, respectively, for property of Products and Rental that was purchased, rented or otherwise acquired by Flasher were fair and reasonable. The prices charged to Products and Rental, respectively, and credited to Flasher for property and services acquired or received by Products and Rental from Flasher were fair and reasonable.

52. Said general accounting of January 31, 1956, was properly conducted and the accounts struck as the result thereof were fair to all of the parties involved and accurately reflected the transactions between and among said parties.

53. As a result of said general accounting it was determined, and it is the fact, that as of January 31, 1956, Flasher owed the sum of $41,405.45 to Products. Said obligation was discharged by the assumption by Flasher of $41,405.45 of the indebtedness of Products to Metcalf. After said assumption of debt the amount of debt principal owing by Products to Metcalf as of January 31, 1956, was $174,492.17.

55. Neither Metcalf nor the directors of Products or Rental failed to disclose to one another or to Shamel any information relative to the business of Products and Rental or their or his interests therein. All information on those subjects possessed by Metcalf and any of the directors of Products and Rental was at all times available to Shamel.

58. Metcalf discharged fully and did not violate any duty owed by him, as a director or officer of Products or Rental, to either of said corporations or to the shareholders, directors or officers thereof.

59. Neither Metcalf nor Flasher used their relations with Products or Rental, or both, to acquire or exercise any unfair advantage over either or both of said corporations or to deprive either or both of them of any business opportunity.

60. The accounting policies of Products and Rental throughout the existence of said corporations have been reasonable, consistent with good accounting practice and not detrimental to the interests of any defendant or Rental.

63. It is not true that plaintiff wrongfully refused to perform or be bound by any agreement or wrongfully evicted the defendant Shamel or refused to permit him to participate in any manner in the determination of policy or the management or control of any business.

64. It is not true that the defendants, or any of them, were prevented by plaintiff from performing their part, or any part, of any agreement or agreements or from repaying any sum or sums advanced by plaintiff in connection with any business.

65. It is not true that the plaintiff at any time wrongfully or with intent to defraud the defendants, or any defendant, or any person whomsoever, organized several, or any, other business concern or concerns, or with intent to defraud or wrongfully cheat and deprive the defendants, or any defendant, or any person whomsoever, of any income diverted all or any portion of any business income or profit to any other organization or organizations whatsoever.

67. It is not true that plaintiff comes into this Court with unclean hands or contra bones mores or is attempting to use this Court in furthering a design or policy not countenanced or permitted by this or any other

1952, the evidence is to some extent and in varying degrees, conflicting.

██ The Supreme Court in *Smith* v. *Bull,* 50 Cal.2d 294 [325 P.2d 463], recently had occasion to consider some problems which are in many respects similar to those involved in the present case. In the Smith case, *supra,* there was an action by the representative of the estate of a deceased partner against a surviving partner for an accounting and the court said (at pp. 305-306), "The weight of the evidence, and the credibility of the witnesses, are matters for the trier of fact. . . . Whether or not defendant was guilty of appropriation and conversion of firm assets, including the goodwill thereof, was a question of fact; . . . The trial court determined the issues here involved adversely to defendant. ██ When there is substantial evidence or any inference to be drawn from the evidence to support the findings of the trial court, an appellate court will not make determinations of factual issues contrary to those made by the trier of fact. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]; *Estate of Teel,* 25 Cal.2d 520, 527 [154 P.2d 384]; *Ambriz* v. *Petrolane Ltd.,* 49 Cal.2d 470, 477 [319 P.2d 1].)"

In their opening brief, appellants have made various contentions including, among others, that the pledge of stock is being held for loans that preceded the pledge agreement and for loans made by Metcalf to companies which he controlled and from which Shamel had been ousted. Finding 12 specifically sets forth the loans made by Metcalf to Products in the total sum of $298,421.06, covering the period from August 3, 1951 (the date of the pledge agreement) to and including

court of equity, or that plaintiff is precluded from requesting any relief from this Court.

68. It is not true that on or about April 30, 1952, or at any other time, the plaintiff obtained from defendant Shamel an instrument in writing modifying or changing any previous agreement or agreements between said parties.

70. It is not true that the plaintiff performed any act, or omitted to perform any act, in any transaction or circumstance relevant to this cause, with malice or with fraudulent intent.

71. It is not true that pursuant to any malicious or fraudulent intent plaintiff diverted any business, custom or trade of the defendants, or any of them, or of Rental, to any new business, organization or organizations owned or controlled by the plaintiff.

73. It is not true that as a result of any malicious, unlawful or fraudulent conduct on the part of the plaintiff all or any of the custom or trade of the defendants, or any of them, or of Rental, was lost or transferred to any organization or organizations owned or controlled by the plaintiff.

June 1, 1953. Finding 14 specifically sets forth that the last $115,377.12 of said loans was excluded by Metcalf from the pledge agreement, leaving the amount of the judgment as the balance secured by said pledge agreement, as set forth in Finding 15.

The appellants further contend that the aforementioned pledge agreement was modified by a letter dated April 30, 1952, which letter it is asserted changed the status of Metcalf from that of a creditor to a shareholder, or, in the alternative that a novation occurred by the letter agreement of April 30, 1952. In Findings 18 and 68 the effect of the letter of April 30, 1952, was determined adversely to appellants' contention and under the circumstances existing in this case we are bound by that factual determination. In addition, Finding 19 determines that, as between the parties to this action, Metcalf is the owner of 51 per cent of the outstanding stock of Products and that Shamel is the owner, subject to said pledge, of 49 per cent of the outstanding stock of Products.

█ Appellants have protested many items pertaining to the accounting procedures which were used and to the conclusions drawn from the conflicting evidence adduced. In Findings 44, 45, 52, 53, and 60 the trial court, based upon competent evidence, determined that the accounting policies followed were reasonable, consistent with good accounting practice and not detrimental to the interests of any defendant; that the books of account were properly kept and accurately reflected the transactions between and among the parties, and that the prices indicated thereon for properties, goods and services were fair and reasonable. Under such circumstances this court is not empowered to redetermine such factual matters (even if we were so minded) as to the reasonableness of the accounting policies followed, the accuracy of the books of account in reflecting the transactions between and among the parties, or the fairness or reasonableness of the prices paid for property and services involved.

Appellants also claim that Metcalf breached his duty to Products as a director thereof. In Findings 55, 58, 59, 63, 64, 65, 66, 67, 70, 71 and 73, it was determined that as to specific matters in issue, Metcalf exercised his powers in good faith and with a view to the best interests of the corporation, as required by Corporations Code, section 821. This court has had occasion in recent cases to comment upon the fiduciary obligation owed by corporate directors to the corporation. (See *Crespinel* v. *Color Corp. of America*, 160 Cal.App.2d

386 [325 P.2d 565] and *Chase* v. *Super-Cold Corp.*, 163 Cal. App.2d 83 [328 P.2d 812].) Suffice it to say that the evidence presented in the trial court was conflicting, and that the trial court upon legally sufficient and competent evidence determined that Metcalf exercised his powers in good faith and with a view to the best interests of the corporation.

Appellants also filed a supplemental brief in which it is contended that Metcalf was guilty of such improper conduct that as a matter of law he is without clean hands or any standing in any court of equity. Appellants then argue from an assumed premise, which is directly contrary to the findings of fact, that Metcalf clearly violated the protective mandate of Corporations Code, sections 820, 824, 825 and 3901, and appellants then reach the conclusion, denominated as inescapable, that, ''as a matter of law, the hands of Mr. Metcalf are rendered 'unclean.' '' Appellants in effect are restating their interpretation of the facts, as might have been proper in the trial court. However, they have made no claim that there was no substantial evidence to support the trial court's contrary findings; and we are of the opinion that there was sufficient substantial evidence to sustain them.

In their supplemental brief appellants also contend ''the security agreement of August 3, 1951, under which this action was brought, was discharged by the subsequent inconsistent security agreement of April 30, 1952, thereby destroying the right of foreclosure contained in the earlier agreement.'' With respect to this contention, the contrary findings by the trial court in our opinion are based upon and supported by competent evidence.

Appellants in their supplemental brief further assert ''the balance the trial court determined to be due is completely erroneous; it is based upon improper charges; and it exceeds a limiting amount stated in a pre-trial agreed statement of facts.'' Again, the arguments presented in connection therewith are of a type which properly should have been addressed to the trial court, and we are not at liberty to consider them. After a careful review of the entire transcript we have concluded that even if it were to be conceded that any errors were made by the trial court in the admission of evidence pertaining to loans made, in view of Finding 14, it would necessarily follow that such errors were not of a sufficiently substantial nature to warrant a reversal therefor.

Appellants' final contention is that appellant Shamel

"was deprived of his constitutional right to a trial by jury on the issues of the counterclaim." The minutes of the proceedings in the trial court under date of May 7, 1957 (the day the cause was called for trial), indicate "Plaintiff's motion for a trial without a jury or for trial of the equitable issues first and the ruling on the motion for a non-jury trial is deferred until the conclusion of the trial of the equitable issues." As we read the pleading denominated "Amended Counter Claim" which by stipulation was deemed to be a cross-complaint, damages are alleged to have resulted from a purported diversion of corporate business to organizations owned and controlled by Metcalf. In effect recovery was sought for the benefit of the corporation and the action was in the nature of a shareholder's derivative suit. Under such circumstances, appellant Shamel had no constitutional right to a trial by jury on the issues of the counterclaim.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 27, 1959, and appellants' petition for a hearing by the Supreme Court was denied March 4, 1959.