[Civ. No. 44093. Second Dist., Div. Five. Apr. 10, 1975.]

JAMES N. RANKIN et al., Plaintiffs and Appellants, v.
FREBANK COMPANY et al., Defendants and Respondents;
JOHN G. McCOY et al., Defendants and Appellants.

**COUNSEL**

Kenneth N. Dellamater, Toxey H. Smith and Robert C. Kent for Plaintiffs and Appellants.

Newell & Chester and D. Benjamin Mason for Defendants and Appellants and for Defendants and Respondents.

## OPINION

**STEPHENS, J.**—On December 4, 1967 plaintiffs James N. Rankin and William D. Myers filed a complaint against John G. McCoy ("McCoy"), Fred Bankey, Joseph Tillery, Frebank Company, a corporation ("Frebank"), Frebank Company Profit Sharing Plan, a trust, and Marion W. McCoy. In essence, the complaint prayed for an involuntary dissolution of Frebank and the recovery of "secret profits" said to have been wrongfully diverted by the controlling officers, directors and stockholders. The trial judge ordered the dissolution of Frebank, but denied recovery of most of the claims for secret profits. Plaintiffs have appealed from the judgment, claiming the trial judge awarded too little; defendants McCoy and Tillery also have appealed, claiming the trial judge awarded too much.

### THE BACKGROUND

#### A. *The Shares of the Company*

Frebank Company was incorporated under the laws of California in July 1950. In conformity with a permit issued by the Corporation Commissioner, 100 shares were issued to Bankey, and 100 shares were issued to one E. S. Rockwell. After a series of transactions not relevant here, by late 1953 McCoy had become the rightful owner of Rockwell's original shares.

The history surrounding the 100 shares issued to Bankey is more complex. Bankey had purchased the shares at least in part with funds provided by Rankin and Myers on the understanding that they would become shareholders. Thus in November 1950, Bankey had one-third of his shares issued in the name of Myers, and another one-third issued in the name of Rankin. However, when McCoy became the owner of Rockwell's former shares, Bankey entered into a campaign to conceal from McCoy the existence of Rankin and Myers as shareholders. Instead, McCoy was to believe that there were but two equal shareholders in the corporation: McCoy and Bankey. Bankey told McCoy that he was a 50 percent shareholder, and at some time between November 14, 1952 and December 31, 1956 the stock book of Frebank was altered in a way calculated to conceal the status of Rankin and Myers. Plaintiffs contended that they played no part in the design to deceive McCoy and that McCoy was not in fact deceived. On the other hand, McCoy contended that Bankey and plaintiffs conspired to deceive him and that

he had been unaware of the existence of Rankin and Myers as stockholders until late in 1960. The trial court resolved this dispute in favor of defendants (the McCoys).

In late 1960, Rankin and Myers (by this point disenchanted with Bankey) filed a lawsuit against Frebank and Bankey in an effort to be declared shareholders of Frebank. The court found that they were each entitled to one-third of Bankey's shares. This judgment was upheld on appeal in *Rankin* v. *Bankey* (1961) 196 Cal.App.2d 554 [16 Cal.Rptr. 721].

Thus, by 1962, following completion of the litigation, Frebank's shares were owned by McCoy (one-half interest), Bankey (one-sixth interest), Rankin (one-sixth interest), and Myers (one-sixth interest). Bankey sold his interest to Tillery in 1966, and McCoy transferred half of his shares to his wife in 1968 by reason of the provisions of an interlocutory decree of divorce.

### B. *The Bancoy Transaction*

From its inception, Frebank was engaged in the business of the sale, engineering, research, development, and/or manufacturing of aircraft missile parts and components under contracts with various United States governmental agencies and defense contractors. However, in September 1954, McCoy and Bankey formed Bancoy Corporation for the purpose of carrying out the manufacturing aspects of the business then being conducted by Frebank. The stock of Bancoy was distributed 50-50 between McCoy and Bankey. From the perspective of McCoy, the purpose of forming Bancoy was to reduce the tax burden of Frebank. Aside from a tax advantage, he gained no financial advantage from the Bancoy transaction; but since Rankin and Myers owned no stock in Bancoy, the effect of shifting Frebank's manufacturing business to Bancoy was to divert assets in favor of Bankey. Instead of having a one-sixth interest in the manufacturing proceeds (in Frebank), Bankey realized a one-half interest in the manufacturing proceeds (in Bancoy).

Bancoy manufactured Frebank's products until early in 1956, and throughout this period plaintiffs did not know that they were without an interest in Bancoy. In 1958, Rankin and Myers learned that they were not stockholders of Bancoy, but they did not know that McCoy or Bankey had received any benefits from Bancoy. In 1962, plaintiffs'

attorney wrote Bankey asking how the stock was held, but received no reply.

Bancoy was finally dissolved in 1966. Over the years Bankey received $27,430.58 in salaries, $2,990 in dividends, and $20,134.99 in retained earnings, including a $14,750 note payable by Frebank, for a total of $50,555.57. McCoy received $6,750 in salaries, $2,990 in dividends, and $20,134.99 in retained earnings, including a $14,750 note payable by Frebank, for a total of $29,875.02.

### C. *The Tillery Note*

The note payable by Frebank to McCoy was transferred to Tillery for $5,000 at a time when Tillery was an officer and director of Frebank. The note bears 4 percent interest, and Tillery has received interest payments of $2,950, but no payments on the principal.

### D. *Benefits Received from Frebank*

From 1954 to 1966, Frebank paid to Bankey (who served as president of Frebank throughout this period) a total of $330,884, and to McCoy (who served as vice-president until 1966 and president thereafter) a total of $59,300. Moreover, Frebank furnished automobiles to McCoy and Bankey for their use, provided insurance on the lives of McCoy and Bankey in the amount of $50,000, and established a profit-sharing plan benefiting Bankey in the amount of $5,597, and McCoy, in the amount of $2,549.

In July 1958, Rankin and Myers filed a petition for writ of mandate directed against Bankey, wherein they alleged that they had information and belief that compensation was being paid to Bankey and other officers of Frebank "in excessive amounts with the sole purpose of depleting the income of respondent company so that these petitioners will not receive their equitable share of dividends." In that proceeding the court ordered that plaintiffs be permitted to inspect all of the records of Frebank. Although plaintiffs had access to all of the records of Frebank from August 1958 to the present, plaintiffs did not file the instant action until December 4, 1967.

### E. *Sun Machinery Transactions*

From 1954 to 1967, defendant McCoy, under the name of Sun Machinery, sold or rented machinery to Frebank.

## THE PLAINTIFFS' CLAIM

Plaintiffs claimed: (1) that defendants should be forced to account for the secret profits arising out of the Bancoy transaction (i.e., obligations paid by Frebank, cash payments to Bancoy, salaries paid by Bancoy to McCoy and Bankey, Bancoy dividends, Bancoy's use of Frebank facilities, and Bancoy's liquidation assets); (2) that defendants should be forced to pay over to Frebank assets wrongfully diverted to them by their concerted actions and self-dealing with respect to Frebank dividends, bonuses, life insurance, profit-sharing, automobiles, and salaries; and (3) that McCoy should be forced to pay over profits arising out of the Sun Machinery transactions.

## THE JUDGMENT

Rulings of the trial court relevant to this appeal are numerous. The trial court ruled that:

(1) Bankey was obligated to pay to Frebank the money he had received from Bancoy ($50,557.57);

(2) McCoy was obligated to pay Frebank the net benefits received from Bancoy ($20,125.02; this figure takes into account the sale of the Frebank note from McCoy to Tillery);

(3) Tillery was entitled to enforce the obligation of the Frebank note in the face amount of $14,750 only to the extent of $5,000 plus interest thereon at 4 percent per annum;

(4) Tillery's right to receive interest was limited to 4 percent on $5,000 (not 4 percent on $14,750, which was the face value of the note), and he was therefore obligated to pay Frebank $1,750;

(5) Plaintiffs' claims for recovery from defendants McCoy and Bankey of benefits and monies received by them from Frebank arising from facts prior to December 4, 1964, were barred by the statute of limitations;

(6) McCoy and Tillery were to be denied indemnity under Corporations Code section 830 for their reasonable expenses, including attorney fees;

(7) McCoy and Tillery were to be charged with the responsibility of winding up and dissolving Frebank;

(8) McCoy was obligated to pay Frebank $3,000 for attorney fees;

(9) The court retained jurisdiction for supervising the dissolution of Frebank;

(10) Rankin and Myers were entitled to judgment against defendants McCoy and Bankey for their costs of suit, but were not entitled to judgment against any defendant for any other sum whatsoever.

### CONTENTIONS ON APPEAL

McCoy and Tillery contend that the trial court erred (1) in ordering judgment for Frebank against McCoy; (2) in ordering that Tillery's interest in the note was confined to $5,000; and (3) in denying the application of McCoy and Tillery for attorney fees.

Rankin and Myers contend that the trial court erred (1) in denying their request for special findings; (2) in denying their right to a jury trial; (3) "in failing and refusing to apply to each and all of defendants' transactions of self-dealing the essence of the legal test of fairness, to wit: arm's length bargains"; (4) in refusing to hold McCoy, Bankey and Tillery liable jointly and severally for the Frebank money and assets wrongfully diverted to them; (5) in ordering McCoy and Tillery to wind up and dissolve Frebank; (6) in failing to consider the case of *Rankin* v. *Bankey* to be res judicata as to McCoy; (7) in denying that McCoy is liable to Frebank for benefits received by Bankey from Bancoy; (8) in holding that recovery against McCoy and Bankey is barred as to all transactions occurring prior to December 4, 1964; and (9) in refusing to award damages to plaintiffs individually.

### THE DEFENDANTS' APPEAL

#### A. *The Judgment for Frebank against McCoy*

#### (1) *The Period Prior to McCoy's Knowledge of the Existence of the Shareholders*

McCoy in conjunction with Bankey set up Bancoy to perform Frebank's manufacturing, an activity which Frebank itself was capable of performing. If McCoy had been aware of the existence of the minority shareholders, Rankin and Myers, there can be no doubt that such a scheme would have violated fiduciary obligations he held as an officer,

director, and majority shareholder. In *Remillard Brick Co.* v. *Remillard-Dandini,* 109 Cal.App.2d 405, 419 [241 P.2d 66], the court found defendants there to be liable because they had used their majority power to "strip the manufacturing companies of their sales functions—functions which it was their duty to carry out as officers and directors of those companies. There was not one thing done by them acting as the sales corporation that they could not and should not have done as officers and directors and in control of the stock of the manufacturing companies." As in *Remillard,* McCoy approved a transaction which diverted substantial functions of his company to another company in a way which operated to deprive Frebank's minority stockholders, the plaintiffs here, of substantial benefits. The distinction between this case and *Remillard* is that in *Remillard* the defendants were fully aware of the existence of the minority shareholders, but in the instant case the trial judge determined that McCoy was completely unaware of the existence of the minority shareholders and had no reason to know of their existence. The trial judge held that this distinction made no difference. We disagree.

The trial judge explained his ruling as follows: "While there appear to have been valid business reasons at the time to form Bancoy, it is clear that its operation and business was made possible by Frebank and that Frebank was deprived of income it would have otherwise received and which would have increased the amount of funds available as profits to the shareholders of Frebank. [¶] Had all stockholders of Frebank participated, there would have been no one to complain on behalf of Frebank. Since they did not, the Court concludes that there must be returned to Frebank the benefits received by Bankey and McCoy from Bancoy—benefits which would otherwise have accrued to the benefit of Frebank. And this is so, even though McCoy was unaware that plaintiffs were stockholders." Thus the trial judge assumed that although McCoy could not be charged with the violation of a duty to the minority shareholders (not even knowing of their existence), he could be charged with a violation of a duty to the corporation, and, unfortunately for him, there were some stockholders available to bring the action on its behalf.

We believe this position misconceives the duty owed by McCoy to the corporation. California Corporations Code section 820 provides that "Directors and officers shall exercise their powers in good faith, and with a view to the interests of the corporation. . . ." At the time McCoy entered into the transaction setting up Bancoy, and throughout the period in which Bancoy assumed the manufacturing functions of Frebank, McCoy had every reason to believe that his actions protected

all of the shareholders of Frebank. If we were to hold that McCoy violated a duty to the corporation, we would have to hold that McCoy owed a duty to the corporation as an empty shell, independent of the interests of its stockholders. But, as Justice Traynor once stated for a unanimous California Supreme Court, "There is nothing sacred in the life of a corporation that transcends the interests of its shareholders." (*In re Security Finance Co.*, 49 Cal.2d 370, 377 [317 P.2d 1].)

In the *Security Finance* case, the plaintiff in a dissolution proceeding was entitled to a dissolution of a corporation even though the dissolution would cause injury to the corporation, and even though the dissolution was contrary to the financial interests of other shareholders. There, the court held that the controlling issue was whether or not the controlling shareholder's "decision to dissolve the corporation was made in good faith" (*Id.*, at p. 377) and that his knowledge that dissolution would injure the corporation was only a factor relevant to the determination of his good faith. If a majority shareholder may knowingly divest a corporation of all its functions (i.e., dissolve it) even when he knows that the dissolution will be harmful to the financial interests of some of its shareholders, there is no reason to hold, in the absence of fraud against creditors, that a controlling shareholder may not divest a corporation of some of its functions in circumstances where he has every reason to believe that the action is in the financial interests of all of the shareholders. Here, also, the controlling test must be good faith.[1]

Moreover, even if McCoy violated a duty to Frebank, plaintiffs are estopped from raising the point with respect to the dividends and retained earnings which McCoy received from Bancoy. "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.) " 'The four essential elements to the application of the doctrine of estoppel are (1) knowledge of the facts by the party to be estopped; (2) intention that his conduct be acted upon, or he acts so that the party asserting estoppel has a right to believe that the conduct is so intended; (3) the party asserting

---

[1]This conclusion is also fortified by the conclusion of the court in *Brainard* v. *De La Montanya*, 18 Cal.2d 502, 510 [116 P.2d 66]. There, the court held that although a corporate director stands in a fiduciary relationship to the corporation in the absence of a fraud against creditors, the directors and shareholders are the only " 'beneficiaries of the trust' " (*Id.*, at p. 511; see also *Cechettini* v. *Consumer Associates, Ltd.*, 260 Cal.App.2d 295, 299 [67 Cal.Rptr. 15]; *Armstrong Manors* v. *Burris*, 193 Cal.App.2d 447, 456 [14 Cal.Rptr. 338]; *Tevis* v. *Beigel*, 174 Cal.App.2d 90, 98-99 [344 P.2d 360]).

estoppel must be ignorant of the true facts; and (4) reliance on the conduct to his injury.' " (*Varela* v. *Wells Fargo Bank,* 15 Cal.App.3d 741, 748 [93 Cal.Rptr. 428].) In its ruling, the trial court rejected McCoy's defense of estoppel because it believed that McCoy suffered no injury. The court stated: "In the Court's opinion the amounts shown as salaries, dividends and profits from Bancoy would have properly been shared by the stockholders of Frebank. Therefore, the Court believes it is not inequitable to require a return of these benefits." This position cannot be supported. If McCoy had known of the plaintiffs' status as shareholders, he could have protected their rights to participate in the Bancoy transaction. Nothing in the record suggests that he would not have done so. He had no financial interest in excluding the plaintiffs from Bancoy. If plaintiffs had been included in Bancoy, McCoy as a 50 percent shareholder, would still have been entitled to the same one-half of the dividends and retained earnings of Bancoy which he received. He would not have been forced to share one penny of those funds with plaintiffs. Plaintiffs' share of the dividends and retained earnings would properly have come from Bankey's share. In fact, with respect to dividends and retained earnings, McCoy received only what he is entitled to: one-half; but if the judgment below were permitted to stand, McCoy would probably fare much worse. The trial court found it "doubtful" that the judgment against Bankey is collectible. If the judgment were collectible, McCoy would receive the same amount of dividends and retained earnings; however, if the judgment against Bankey cannot be collected, McCoy would have to share his retained earnings and dividends with plaintiffs. If the judgment against Bankey is collectible, McCoy's return of the Bancoy receipts is a needless exercise;[2] if the judgment is not collectible, McCoy will suffer an injury directly traceable to plaintiffs' complicity in concealing their shareholder-status from McCoy. The doctrine of estoppel was designed to preclude precisely such a result.

On the other hand, the trial court found that "if the entire operation of the two companies is considered as one, there is no justification for the payment of these [Bancoy] salaries in addition to those received by Bankey and McCoy from Frebank." Thus plaintiffs are not estopped to contest McCoy's salary from Bancoy, but since McCoy violated no duty to Frebank in creating Bancoy (or collecting a salary), the claim would fail. However, except for the fact that the trial court correctly found that the statute of limitations has run, plaintiffs could rightfully claim that the salary paid by Frebank is excessive by $6,750, the amount that McCoy received from Bancoy. This conclusion follows because it is clear that the

---

[2] There is no danger here of fraud against creditors.

trial judge, in evaluating the question of whether or not the salary paid by Frebank to McCoy is excessive, considered the work of McCoy in both corporations in determining the proper amount of salary.

### (2) *The Period After McCoy's Knowledge of the Existence of the Other Shareholders*

The trial court found that McCoy became aware of the existence of plaintiffs' shareholder status by 1961. It is not clear whether McCoy had knowledge that Rankin and Myers were unaware of the Bancoy transaction. The trial court found that plaintiffs' attorney had inquired, in writing, of Bankey as to how the stock of Bancoy was held, but received no reply. The record does not disclose any evidence suggesting that McCoy was aware of plaintiffs' ignorance.

While McCoy received certain financial benefits from Bancoy after he knew of the existence of Rankin and Myers, it is clear that the benefits necessarily derive from profits made by Bancoy long before McCoy was aware that anyone but Bankey was in the picture. Bancoy had become inactive sometime after "early 1956." Consequently, it is difficult to see how McCoy's 1961 discovery of their interest in Frebank could affect previously earned profits of Bancoy.

### B. *The Tillery Note*

At one time California adhered to the strict and inflexible view that a director of a corporation could not, consistently with his fiduciary obligations, purchase outstanding obligations of the corporation (*Davis* v. *Rock Creek L. F. & M. Co.* (1880) 55 Cal. 359), but while contemporary rules of law recognize that both trustees and directors of corporations assume fiduciary obligations, the nature and contours of those obligations are not coextensive. The 19th century equation of directors' responsibilities with trustee responsibilities has long since been discarded. The prevailing rule was well stated in *Todd* v. *Temple Hospital Assn., Inc.* (1928) 96 Cal.App. 42, 47 [273 P. 595], where the court observed that directors of corporations are not "trustees of the property of the corporation in such sense as to disable them from purchasing and enforcing corporation indebtedness, unless the circumstances of the transaction make it inequitable for them to do so." (Accord, *Stack* v. *Welder* (1934) 137 Cal.App. 647, 652 [31 P.2d 426]; *Kleinsasser* v. *McNamara* (1933) 129 Cal.App. 49, 59 [18 P.2d 423]; Annot., 13 A.L.R.2d 1172.)

Plaintiffs maintain that it would be inequitable to permit Tillery to enforce the note.[3] They argue that Tillery has taken advantage of a corporate opportunity for his own personal gain. The short answer to this contention is that there was no corporate opportunity. First, the corporation was 120 days delinquent on its accounts payable and could not have afforded to purchase the note.[4] Second, even if the funds were available, it would have been prejudicial to the rights of the creditors for Frebank to retire this obligation owing to an officer and director (McCoy) as opposed to liquidating other obligations. Third, McCoy offered the corporate note to Tillery at a discount in an effort to offer Tillery a greater stake in the success of the corporation. McCoy testified that he offered the transfer of the note to Tillery "for some of the same purposes that a stock option is given to an employee in a corporation. . . . . He was only getting one-third of what he was worth . . . and it was to insure that he wouldn't leave . . . because in my opinion he was the only one available capable of running the operation at that time." There is no evidence in the record which remotely implies that McCoy would have been willing to sell his note at a discount to the corporation. He certainly was under no duty to do so. "[A] creditor of a corporation is not deprived of his rights by reason of the fact that he is a director." (15 Cal.Jur.3d, § 231 at p. 281, citing *Todd* v. *Temple Hospital Assn., Inc.* (1928) 96 Cal.App. 42 [273 P. 595].)

Thus Tillery had every right to avail himself of the opportunity to buy the note. "Where . . . the opportunity is not available to the corporation . . . because one refuses to deal with it . . . the opportunity may be embraced by an officer or director as his own without accountability to the corporation for the profits." (19 Am.Jur.2d, Corporations, § 1313, p. 721.)

---

[3]Plaintiffs further contend that the sale of Bankey's shares to Tillery violated fiduciary duties because the offer to sell the shares was not made available to them or to the corporation. This claim is totally devoid of merit. Plaintiffs cite no cases even intimating that a shareholder, in the absence of a prior agreement, must offer to sell his shares to other shareholders or the corporation before selling to an outsider. Moreover, nothing in the record indicates that the transaction was other than in good faith.

[4]Plaintiffs cite *Irving Trust Co.* v. *Deutsch* (2d Cir. 1934) 73 F.2d 121, 124 (cert. den., 294 U.S. 708 [79 L.Ed. 1243, 55 S.Ct. 405]), a case which holds that a corporate officer may not take an advantage of a corporate opportunity even if the corporation is financially unable to do so. We have found no California case on this point. (6 Witkin, Summary of Cal. Law, Corporations, § 81, p. 4380) states: "[I]f the corporation is financially or otherwise unable to take advantage of the opportunity, or after being offered it refuses, there is no objection to the director's acquisition of it." However, we need not reach the question because, as discussed *infra*, the corporation had no opportunity even if it had the available funding.

The trial judge held that Tillery was not entitled to profit on the note, relying on the general rule that while the corporation is insolvent, a director or officer cannot purchase an obligation at a discount and enforce it at face value (citing 3 Fletcher's Cyclopedia of Corporations, §§ 869, 869.1). That reliance was misplaced. The mischief which prompted the enunciation of that rule is not present in the instant case. In fact, the application of the general rule that directors of an insolvent corporation may not purchase claims against it is inapplicable to an insolvent-but-going concern. In *Manufacturers Tr. Co.* v. *Becker* (1949) 338 U.S. 304 [94 L.Ed. 107, 7 S.Ct. 127], the United States Supreme Court held that parties who were considered to be in the status of directors of a corporation could enforce a corporate obligation at face value even though they had purchased it at a discount, provided that the transaction was fair and that judicial proceedings for the relief of the corporation were not expected or yet begun. Thus the court held that the standard of fairness was an adequate protection against self-interest. (See also *Punch* v. *Hipolite Co.* (1936) 340 Mo. 53 [100 S.W.2d 878].) To be sure, directors of a corporation cannot secure to themselves any preference or advantage over the other creditors in the payment of their claims (*Bonney* v. *Tilley* (1895) 109 Cal. 346, 352 [42 P. 439]), but here there is no showing that Tillery acted in a manner prejudicial to the interests of creditors. Nor was there any showing that the opportunity to purchase this note during a period of financial weakness of the corporation deprived "a going corporation of the sound judgment of its officer." (*Manufacturers Tr. Co.* v. *Becker, supra,* at p. 313 [94 L.Ed. at p. 115].) To deprive Tillery of the advantage of this note we would have to return to the 19th century equation of trustees and directors. There is no reason to do so.

### C. *McCoy's and Tillery's Attorneys' Fees and Expenses*

Defendants McCoy and Tillery applied for attorneys' fees and expenses under Corporations Code section 830. These claims were denied at least in part because of the outcome of the case. In view of our reversal of the trial court's judgment imposing liability on McCoy and Tillery, we vacate the judgment with respect to attorney fees and expenses, and remand the issue to the lower court for consideration on retrial.

### THE PLAINTIFFS' APPEAL

Many of plaintiffs' arguments may be treated summarily. Their claims at trial required a thorough-going investigation of virtually all the

transactions of Frebank and Bancoy throughout their corporate existence. After examining all of the evidence, the trial court concluded that the transactions between Sun Machinery and Frebank, and between Bancoy and Frebank, were conducted in the best interests of Frebank. The trial court also concluded that the compensation and benefits paid to the corporate officers were not excessive, and that payments for insurance on the lives of the corporate officers were solely for the benefit of Frebank.

In most of their argumentation, plaintiffs invite us to second guess the findings of the trial judge. This is not the function of an appellate court. We have reviewed the entire record and are more than satisfied that the findings of the trial judge are supported by substantial evidence. Moreover, the justification for those findings is expertly summarized in the trial judge's announcement of intended decision. Thus it suffices for us to say that we affirm the findings of the trial judge in all particulars.[5]

Three contentions of the plaintiffs deserve extended discussion: (1) that they had a right to trial by jury; (2) that *Rankin* v. *Bankey* estops McCoy from raising the issue of a conspiracy; and (3) that plaintiffs should have been awarded individual damages.

## A. *Right to Trial by Jury*

■ Plaintiffs contended at the trial that they were entitled to a trial by jury on the issues presented. The trial judge concluded that there was no right to a jury trial in the context of this case. We agree.

Plaintiffs assert that in a number of California cases a "wide variety of corporate claims" have been tried by juries in stockholder derivative actions, citing *Highland Realty Co.* v. *City of San Rafael*, 46 Cal.2d 669, 682 [298 P.2d 15]; *Brown* v. *Halbert*, 271 Cal.App.2d 252 [76 Cal.Rptr. 781, 38 A.L.R.3d 718]; *Bank of America* v. *Lamb Finance Co.*, 145 Cal.App.2d 702, 709 [303 P.2d 86]; *Ripling* v. *Superior Court*, 112 Cal.App.2d 399, 402 [247 P.2d 117]; *Mortimer* v. *Loynes*, 74 Cal.App.2d

---

[5]*In so ruling, we dispose of plaintiffs' contentions (3), (4), (5), (7) and (8) (detailed, ante at pp. 82-83). Most of them assume that plaintiffs did not agree with Bankey to conceal their shareholder status from McCoy. This conclusion is contradicted by Rankin's own testimony. Plaintiffs' first contention of error by the trial court in denying their request for special findings is also not well taken. The findings which they requested are in actuality requests for statements of legal conclusions or requests for factual findings already covered by the trial court's findings, or which are inconsistent with facts found by the trial court.

160, 171 [168 P.2d 481]. None of these cases is of assistance to plaintiffs. Indeed, four of them did not even involve a stockholders' derivative action: in *Highland,* the plaintiff was a realty corporation; in *Bank of America,* the plaintiff was the bank; in *Ripling,* the plaintiff was the guardian of the estate of an incompetent; and in *Mortimer,* the plaintiff was a building and loan commissioner suing as the liquidator of a building and loan association. None of these cases support the contention that plaintiffs in a stockholders' derivative action have a right to trial by jury. Nor is *Brown* v. *Halbert* of any assistance to plaintiffs. It is true that in *Brown,* plaintiff stockholders sued derivatively and that a jury was present in the case, but, as the appellate court was careful to note, "the verdict of the jury was only advisory on the equitable issues. . . . Rather, we here concern ourselves with the findings made *by the court.*" (271 Cal.App.2d at p. 254; italics original.) *Brown* stands for the proposition that a trial court sitting in equity may impanel a jury in an advisory capacity. Nothing in *Brown* suggests that a trial court must impanel an advisory jury, let alone that plaintiffs have a right to a trial by jury in a stockholders' derivative action. Rather, the pertinent case on the issue is *Metcalf* v. *Shamel,* 166 Cal.App.2d 789 [333 P.2d 857]. There the court stated that "recovery was sought for the benefit of the corporation and the action was in the nature of a shareholder's derivative suit. Under such circumstances, appellant . . . had no constitutional right to a trial by jury. . . ." (*Id.,* at p. 796.) (See also *Burt* v. *Irvine Co.,* 237 Cal.App.2d 828, 851 [47 Cal.Rptr. 392]; *Rosenfeld* v. *Zimmer,* 116 Cal.App.2d 719, 722 [254 P.2d 137]; *Nessbit* v. *Superior Court,* 214 Cal. 1, 8 [3 P.2d 558]; *Fornaseri* v. *Cosmosart Realty etc. Corp.,* 96 Cal.App. 549, 556 [274 P. 597].)

Plaintiffs also urge that we should be influenced by federal cases on the subject. The leading case is *Ross* v. *Bernhard* (1970) 396 U.S. 531 [24 L.Ed.2d 729, 90 S.Ct. 733], which held that "the Seventh Amendment preserves to the parties in a stockholder's suit the same right to a jury trial that historically belonged to the corporation and to those against whom the corporation pressed its legal claims." (*Id.,* at p. 542 [24 L.Ed.2d at p. 738].) *Ross* is one of a long line of cases in which the United States Supreme Court has reread the historical underpinnings of the Seventh Amendment in an effort to compose a new logic for that section of the Constitution. (See *Curtis* v. *Loether* (1974) 415 U.S. 189 [39 L.Ed.2d 260, 94 S.Ct. 1005]; *Dairy Queen* v. *Wood* (1962) 369 U.S. 469 [8 L.Ed.2d 44, 82 S.Ct. 894]; *Beacon Theatres* v. *Westover* (1959) 359 U.S. 500 [3 L.Ed.2d 988, 79 S.Ct. 948].) Thus if this action were tried in a federal court, it is clear that plaintiffs would be entitled under the

Seventh Amendment to a trial by jury. However, the Seventh Amendment has never been held to be applicable to state proceedings, and California has interpreted article I, section 7 of the California Constitution to preserve to litigants the right to trial by jury as it existed at common law in 1850. (*Veale* v. *Piercy* (1962) 206 Cal.App.2d 557, 560 [24 Cal.Rptr. 91]; *Ripling* v. *Superior Court* (1952) 112 Cal.App.2d 399, 402 [247 P.2d 117].) California has yet to depart from this historically based approach to the interpretation of article I, section 7. We decline to do so here.

In an effort to avoid the fact that California entertains no right to jury trial in stockholders' derivative actions, plaintiffs alternatively maintain that the action they have brought is not derivative in character, citing Hornstein on Corporations, section 825: "Unlike the shareholder's derivative suit, which is for vindication of a corporate right, a minority shareholder's suit for dissolution or to wind up the corporation is an individual (and representative) suit for damage to him as an individual, directly and independently of any damage to the corporation." Of course, this is correct, but it does not support a right to a jury trial. In the first place, it is settled that the right to jury trial does not attach to the dissolution proceeding itself. An action for an involuntary dissolution of a corporation by a shareholder is a special proceeding "in that the proceedings and relief sought are created by statute." (*Weisman* v. *Odell*, 3 Cal.App.3d 494, 496 [83 Cal.Rptr. 563]; *Rosner* v. *Benedict Heights, Inc.*, 219 Cal.App.2d 1, 6 [32 Cal.Rptr. 764]; *Esparza* v. *Kadam, Inc.*, 182 Cal.App.2d 802, 807 [6 Cal.Rptr. 450].) Since in the absence of a statute the California right to trial by jury extends only to those cases triable by a jury at common law as it existed in 1850, and since the courts could not dissolve a corporation on petition of a minority shareholder prior to 1931 (*Weisman* v. *Odell, supra,* at p. 494; *Elliott* v. *Superior Court,* 168 Cal. 727 [145 P. 101]), it is clear that the right to trial by jury does not extend to an involuntary dissolution proceeding. (29 Cal.Jur.2d, Jury, § 13, p. 501.)

Therefore, if the actions brought by plaintiffs are not characterized as derivative actions but merely incidental outgrowths of the dissolution proceeding,[6] plaintiffs are still without a right to trial by jury.

---

[6]2 Hornstein, Corporation Law and Practice, section 825, at page 373: "The basis of complaint is the breach of trust by the corporation's directors in the management of its affairs, and all the relief prayed for, including an accounting, is *incidental* to the winding up of the corporation and the distribution of its assets." (Italics added.)

## B. *Collateral Estoppel*

■ The trial judge accepted defendant McCoy's contention that defendant Bankey and plaintiffs entered into a conspiracy to conceal from McCoy the fact that plaintiffs were shareholders of the company. Plaintiffs argue that McCoy was estopped to raise the contention because it had already been litigated in *Rankin* v. *Bankey, supra,* 196 Cal.App.2d 554. This position is without merit. In *Rankin* v. *Bankey,* plaintiffs sought and obtained a declaratory judgment against Frebank and Bankey to the effect that plaintiffs were entitled to be recognized as shareholders. Bankey contended at the trial that plaintiffs had loaned money to him and that it was never agreed that Bankey would invest money for plaintiffs. (*Id.,* at p. 557.) Bankey at no time during the trial even remotely suggested that plaintiffs and he had conspired to conceal plaintiffs' shareholder status from McCoy. Such a position would have been entirely inconsistent with his defense.

On appeal, Bankey tried a new tack. He argued that assuming there was an agreement for Bankey to invest on behalf of the plaintiffs, the agreement was made in violation of the Corporations Code and constituted a conspiracy to deceive the Corporations Commissioner. Even on appeal Bankey never remotely intimated that plaintiffs had sought to deceive McCoy, let alone that such a conspiracy should somehow inure to his benefit. The Court of Appeal noted that there was no finding in the record to support the contention that plaintiffs had conspired to deceive the commissioner, or anyone else. (*Id.,* at p. 562.) Plaintiffs now contend that since the Court of Appeal found no evidence of a conspiracy to deceive anyone, McCoy, who was not even a party to the action, should now be precluded, indeed estopped, from demonstrating the existence of this conspiracy, a conspiracy to which Rankin freely confessed on cross-examination during the trial of this case.

"It is now settled in this state that the following three questions are determinative of the applicability of the doctrine of collateral estoppel: 'Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?'" (*Vanguard Recording Society, Inc.* v. *Fantasy Records, Inc.,* 24 Cal.App.3d 410, 417 [100 Cal.Rptr. 826], quoting *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 813 [122 P.2d 892].)

Clearly, the issue litigated in *Rankin* v. *Bankey* is not identical to the issue involved in this case. In *Rankin,* the issue was whether or not plaintiffs were shareholders of Frebank. In the instant case, McCoy does not contest the fact that plaintiffs are now and have always been de jure shareholders in Frebank. In *Rankin,* no one contended that plaintiffs had conspired to deceive McCoy, and such a contention would have been of doubtful relevance. Nothing in *Rankin* precluded McCoy from demonstrating the existence of a conspiracy between plaintiffs and Bankey.

A better but ultimately unsatisfactory argument is plaintiffs' contention that the trial court's finding in *Rankin* that Bankey fraudulently caused the records of Frebank to be altered on December 31, 1956 (to reflect him to be the owner of one-half of the shares of the corporation) should have been deemed to be binding upon McCoy in the instant case. Plaintiffs seize on the date of alteration as significant because McCoy, in 1953, became a 50 percent shareholder, a director, and vice-president of the corporation. They argue that his belief that Bankey was a 50 percent shareholder could not be described as reasonable because he was charged with knowledge of the records of the corporation (*Pacific Vinegar etc. Works* v. *Smith,* 152 Cal. 507 [93 P. 85]). However, again, the issue litigated was not identical. The *date* of alteration of the records in *Rankin* was of no legal consequence; instead, the crucial issue was the cause or motive for the alteration of the records. Thus the factual finding as to the *date* of alteration of the records was not the product of a contest between adversaries with a vital interest in its outcome. The issue, therefore, was not identical.

Even if the issue were identical, it is not altogether clear that McCoy, who was not a party to the proceeding, should be bound merely because of his status at Frebank. A finding that a person is in privity with a party to a prior adjudication cannot be based on so mechanical a test. There must be a true identity of interest between the earlier party litigant and the party to be estopped. To bind a person to a factual finding of an earlier case to which he was not a party or a successor in interest of a party or a controller of the litigation, although occasionally permitted (*People* ex rel. *State of Cal.* v. *Drinkhouse,* 4 Cal.App.3d 931, 937 [84 Cal.Rptr. 773]), inevitably raises constitutional questions of grave import. Such questions would seem to be of particular consequence in this context. McCoy had no financial interest in the shareholder status of plaintiffs. As far as he was concerned, it was a dispute between plaintiffs and Bankey. To rule that McCoy could not raise an issue because a sub-issue had been decided in another case in which he had no more

than a nominal interest would raise due process questions of the most serious nature. Since the issue in dispute in *Rankin* is not identical, there is no occasion to decide those questions here.

## C. *The Award of Individual Damages*

■ Plaintiffs insist that the trial court should have awarded damages to them individually instead of to the corporation. Since (as discussed *ante*) Bankey is the only person liable under our resolution of the case, we confine our discussion to Bankey's liability for the Bancoy transaction.

Plaintiffs contend that they had a personal right of action against Bankey independent of the corporation. The cases do not support this position. As the court explained in *Shenberg* v. *DeGarmo,* 61 Cal.App.2d 326, 330 [143 P.2d 74]: "It is a general rule that a corporation which suffers damages through wrongdoing by its officers and directors must itself bring the action to recover the losses thereby occasioned, or if the corporation fails to bring an action, suit may be filed by a stockholder acting derivatively on behalf of the corporation. An individual may not maintain an action in his own right against the directors for destruction of or diminution in the value of the stock. . . . This rule is justifiable, for the rights of creditors of the corporation, which are superior to those of the shareholders, would not be protected if individual shareholders were permitted to sue in their own right." None of the cases cited by plaintiffs contradict this general rule. Instead, they speak to an exception to that rule (which is not applicable here) "where it appears that the injury resulted from the violation of some special duty owed to the stockholder by the wrongdoer and having its origin in *circumstances independent of the plaintiff's status as a stockholder.*" (*Shaw* v. *Empire Savings & Loan Assn.,* 186 Cal.App.2d 401, 407 [9 Cal.Rptr. 204]; italics original.)

In *Jones* v. *H. F. Ahmanson & Co.,* 1 Cal.3d 93, 107 [81 Cal.Rptr. 592, 460 P.2d 464], the Supreme Court made clear that the individual wrong suffered by the shareholder under the exception described in *Shaw* "need not be unique to that plaintiff. The same injury may affect a substantial number of shareholders. If the injury is not incidental to an injury to the corporation, an individual cause of action exists." (Fn. omitted.) Here, however, the wrong suffered by plaintiffs is, at least, incidental to a loss suffered by the corporation, and thus no private right of action accrues.

Nevertheless, it seems inequitable (assuming the judgment against Bankey is collectible) for the dividends and retained earnings acquired by Bankey from Bancoy to be distributed to all of the shareholders of the corporation. If this were done, McCoy would receive one-half of these funds despite the fact that he has no right to receive them because he had retained his proportion of the dividends and retained earnings received from Bancoy. Instead, an equitable distribution of those funds would require that only Bankey, Rankin, and Myers each receive one-third of the dividends and retained earnings received by Bankey from Bancoy. Other courts have been willing to equitably distribute damages in stockholders' derivative actions. (*Pearlman* v. *Feldmann* (2d Cir. 1955) 219 F.2d 173, 178.) There is good reason to do so here. On the other hand, the salary of Bankey is entitled to be distributed among all the shareholders of the corporation. The court ruled that it was excessive; therefore, it should rightfully be distributed as dividends among all the shareholders.

This case illustrates that shareholders' derivative suits cannot all be pressed into a single mold. The paradigm derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders when injury is caused to the corporation that may not otherwise be redressed because of the failure of the corporation to act. (*Jones* v. *H. F. Ahmanson & Co., supra,* at p. 106.) The individual suit is said to lie only when there is no injury to the corporation. (*Id.,* at p. 107.) In *Ahmanson,* the plaintiff avoided this problem by the dubious stipulation that the corporation had not been injured. (*Id.,* at p. 107.) This procedure, although insuring an equitable damage award, runs the risk of damaging the interests of creditors, and compels the parties to stipulate to fiction. A rule which permits a court to equitably distribute damages in a derivative action safeguards the interests of creditors while simultaneously protecting the interests of shareholders. We adopt it as the most effective method of accommodating the relevant interests involved in this case.

### DISPOSITION

Accordingly, the judgment is modified as follows:

That portion of the judgment which orders, adjudges and decrees that Frebank recover from Bankey the sum of $50,557.57 is modified to provide that the salary that Bankey received from Bancoy be distributed among all the shareholders of the corporation, but that the retained

earnings and dividends received by Bankey from Bancoy are to be distributed among Bankey, Rankin, and Myers in equal thirds;

That portion of the judgment entitling Frebank to recover from defendant John G. McCoy the sum of $23,125.02 is reversed;

That portion of the judgment entitling defendant Frebank to recover from Joseph Tillery the sum of $750 is reversed;

That portion of the judgment ordering Frebank to pay Tillery the sum of $5,000 in full payment and discharge of a note of Frebank in the principal amount of $14,750 is modified to provide that Frebank must pay the full amount of $14,750, together with any interest presently owing;

That portion of the judgment denying the applications of defendants McCoy and Tillery for indemnity against Frebank, that portion of the judgment ordering McCoy to repay $3,000 to Frebank for attorney fees paid in connection with this action, and that portion of the judgment denying attorney fees, are vacated and remanded for further proceedings in light of this opinion.

That portion of the judgment that plaintiffs Rankin and Myers shall recover costs of suit from defendant McCoy is vacated and remanded for further proceedings in light of this opinion.

The other portions of the judgment are affirmed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied May 8, 1975, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied June 11, 1975.